(Nos. 58056, 58062, 58085 cons.—

JANICE MARIE CROCKER, Appellee, v. MORGAN M. FINLEY *et al.*, Appellants.

*Opinion filed February 1, 1984.*

Richard M. Daley, State's Attorney, of Chicago (Henry A. Hauser, Jane Clark Casey, and Robert S. Vihon, Assistant State's Attorneys, of counsel), for appellants.

Sidney Z. Karasik, Lionel Brazen, and Catherine L. Grahn, of Chicago, for appellee.

Neil F. Hartigan, Attorney General, of Springfield (Karen Konieczny, Assistant Attorney General, of Chicago, of counsel), for intervening appellants the People and Susan Catania.

Aviva Futorian and Sharon Pitts, of Chicago, for intervening appellant Chicago Metropolitan Battered Women's Network.

Leslie Landis, Candace Davis, and Marc Gaynes, of Chicago, for intervening appellant Illinois Coalition Against Domestic Violence.

CHIEF JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Janice Marie Crocker, brought this class action in January 1982 against several Cook County officers to challenge the validity of sections 27.1(a)(3) and 27.2(1)(d) of "An Act to revise the law in relation to clerks of courts" (Ill. Rev. Stat. 1981, ch. 25, par. 27.1(a)(3); Ill. Rev. Stat., 1982 Supp., ch. 25, par. 27.2(1)(d)). As amended by Public Act 82—645, effective January 1, 1982, these provisions require clerks of the circuit courts to collect a special $5 filing fee from petitioners for dissolution of marriage. The $5 fee, which is paid in addition to regular filing fees, is collected to fund shelters and other services for victims of domestic vio-

lence in Illinois. See Ill. Rev. Stat. 1981, ch. 40, pars. 2401-2403; Ill. Rev. Stat., 1982 Supp., ch. 40, par. 2403.1.

As a petitioner for dissolution of marriage, plaintiff paid the $5 fee under protest. She then brought this suit in the circuit court of Cook County, naming as defendants the clerk of that court, his chief deputy in the domestic relations division, and the county treasurer. Plaintiff charged that the fee statute contravenes numerous provisions of the Federal and State constitutions. She requested the court to declare the statute invalid, to enjoin collection of the fee, and to restrain the clerk from transferring to the county treasurer the fees already collected.

Upon plaintiff's motion, the trial court ordered the clerk to segregate all $5 fees collected from dissolution-of-marriage petitioners. The order directed the clerk to deposit the fees into interest-bearing accounts to be entitled the "Domestic Violence Special Protest Fund." The court appointed a trustee to supervise the fund, and it temporarily restrained the clerk and his deputies from transferring the fees to the county treasurer.

The following parties then requested and were granted leave to intervene: The People of the State of Illinois and Susan Catania, chairperson of the Illinois Commission on the Status of Women (represented by Illinois Attorney General Neil F. Hartigan); the Chicago Metropolitan Battered Women's Network and the Illinois Coalition Against Domestic Violence. After denying defendants' and intervenors' motions to dismiss, the court granted plaintiff's motion to define and certify a class. The classes certified consist of a State class—all persons in the State of Illinois who petitioned for dissolution of marriage on or after January 1, 1982, and paid the $5 fee—and a similar subclass consisting only of Cook County petitioners.

On cross-motions for summary judgment, the trial court ruled in plaintiffs' favor on all issues of the complaint. The court reaffirmed the conclusions that it had set out in a memorandum of decision issued when it denied the motions to dismiss. It held that the fee statute contravenes the due process and equal protection guarantees contained in the United States and Illinois constitutions; that the statute constitutes special legislation in violation of article IV, section 13, of the Illinois Constitution; and that the fee infringes upon the right to obtain justice freely which is secured by article I, section 12, of the Illinois Constitution. Accordingly, the trial court ordered the trustee to present a plan of refund to the class. Aware that the defendants and intervenors planned to appeal, the court stayed its judgment and the implementing orders pending appeal.

Defendants and intervenors contend that the fee statute comports in all respects with the Federal and State constitutions. From the order granting plaintiffs' counter-motion for summary judgment, they appealed directly to this court pursuant to our Rule 302(a)(1). 87 Ill. 2d R. 302(a)(1).

The provisions imposing the challenged $5 fee are one facet of a statutory scheme designed to combat domestic violence in this State. Enacted in 1981, the Illinois Domestic Violence Act (Ill. Rev. Stat. 1981, ch. 40, pars. 2301—1 to 2303—5) recognizes domestic violence as a serious crime against victims who are unable to effectively protect themselves. (Ill. Rev. Stat. 1981, ch. 40, pars. 2301—2(1), (2).) With this Act, the legislature sought to expand the civil and criminal remedies available to victims, and to provide law enforcement officers with tools for prompt assistance. Ill. Rev. Stat. 1981, ch. 40, pars. 2301—2(3), (4).

To supplement the Illinois Domestic Violence Act, the legislature passed "An Act in relation to domestic rela-

tions and domestic violence shelters and service programs." (Ill. Rev. Stat. 1981, ch. 40, pars. 2305—1 to 2403; Ill. Rev. Stat., 1982 Supp., ch. 40, par. 2403.1.) This Act authorizes the Department of Public Aid to "administer domestic violence shelters and service programs *** for adults and their dependents who are the subjects of domestic violence." (Ill. Rev. Stat. 1981, ch. 40, par. 2402.) The shelters thus established are intended to provide "temporary residential facilities to family or household members who are victims of domestic violence and their children." Ill. Rev. Stat. 1981, ch. 40, par. 2401(c).

This Act directs the Department of Public Aid to finance the shelters and service programs by allotting monies from the Domestic Violence Shelter and Service Fund. (Ill. Rev. Stat. 1981, ch. 40, par. 2403.) It is to support this fund that the $5 fees, at issue in the case at bar, are collected. (Ill. Rev. Stat. 1981, ch. 25, pars. 27.1(a)(3), 27.2(1)(c).) As another source of revenue, the fund receives proceeds from a special $10 fee charged by county clerks for each marriage license issued. Ill. Rev. Stat. 1981, ch. 53, pars. 35, 73.

To implement this funding process with respect to the fee imposed on dissolution-of-marriage petitioners, the legislature amended "An Act to revise the law in relation to clerks of courts." As amended, the Act now imposes the $5 fee that plaintiffs challenge in this action:

"Sec. 27.1. The fees of the Clerk of the Circuit Court in all counties having a population of 1,000,000 inhabitants or less *** shall be as follows:

(a) Chancery

* * *

(3) All cases seeking dissolution of marriage $45 of which $5 shall be paid into the Domestic Violence Shelter and Service Fund." Ill. Rev. Stat. 1981, ch. 25, par. 27.1(a)(3).

"Sec. 27.2. The fees of the Clerks of the Circuit Court in all counties having a population in excess of 1,000,000

inhabitants \*\*\* shall be as provided in this Section. \*\*\*

(1) The fee for filing a complaint, petition or other pleading initiating a civil action, with the following exceptions, shall be $75.

\* \* \*

(d) Dissolution of marriage: the filing fee as required above; and an additional $5 which shall be paid into the Domestic Violence Shelter and Service Fund." (Ill. Rev. Stat., 1982 Supp., ch. 25, par. 27.2(1)(d).)

The clerk of each circuit court is to deposit these fees with the county treasurer (see Ill. Rev. Stat. 1981, ch. 85, pars. 721, 722), who remits them monthly to the State Treasurer. The State Treasurer then deposits this money into the Domestic Violence Shelter and Service Fund in the State Treasury. Ill. Rev. Stat., 1982 Supp., ch. 40, par. 2403.1 (repealing section 1.2f of "An Act to revise the law in relation to county clerks" (Ill. Rev. Stat. 1981, ch. 35, par. 1.2f)). See also section 6b—4 of "An Act in relation to State Finance" (Ill. Rev. Stat. 1981, ch. 127, par. 142b4), which requires that fees collected for the Domestic Violence Shelter and Service Fund in counties of 3,000,000 or more inhabitants be used solely in those counties.

The salutary goals of our new domestic violence acts are not at issue in this case. Nor is the General Assembly's decision that the laws were sorely needed. Instead, the question presented is whether the legislature may impose a court filing fee on a limited group of litigants where the funds so collected go ultimately into the State Treasury to fund a general welfare program. This central issue inheres in each of the constitutional grounds on which plaintiffs attack the fee statute and on which the trial court based its conclusions.

We first address the lower court's decision and the plaintiffs' contention that the $5 fee conflicts with the Illinois constitutional right to obtain justice by law freely. Based on the following considerations, we agree that this

provision renders the fee statute invalid.

The $5 charge at issue, referred to by statute as a fee, is in reality a tax. A fee is defined as a "charge fixed by law for services of public officers" (Black's Law Dictionary 553 (5th ed. 1979)) and is regarded as compensation for the services rendered (36A C.J.S. *Fee*, at 248 (1961)). Thus, court charges imposed on a litigant are fees if assessed to defray the expenses of his litigation. On the other hand, a charge having no relation to the services rendered, assessed to provide general revenue rather than compensation, is a tax. (*Cook County v. Fairbank* (1906), 222 Ill. 578, 582-87; see also 1 T. M. Cooley, Taxation sec. 33 (C. A. Nicols 4th ed. 1924); 84 C.J.S. *Taxation* sec. 1.b, at 34-35 (1954).) When these definitions are applied, there can be little dispute that the $5 charge to dissolution-of-marriage petitioners constitutes a tax on litigation.

Statutes imposing litigation taxes, however, do not necessarily offend our State constitution. In *Ali v. Danaher* (1970), 47 Ill. 2d 231, for example, this court upheld a statute that allows clerks of the trial courts to charge a $1 tax to each litigant who files a first pleading. Funds thus collected go to establish and maintain county law libraries. (See Ill. Rev. Stat. 1981, ch. 81, par. 81.) In spite of constitutional challenges nearly identical to those raised by plaintiffs in the present case, the county law-library tax was held to be valid.

*Ali v. Danaher* illustrates that a litigation tax may sometimes be imposed. That case, however, does not control the case at bar. Instead, the present appeal compels us to consider a further question that prior cases do not adequately resolve. That is, for what purposes may litigants be taxed?

Recognizing the crucial nature of this inquiry, the parties to this litigation debate the issue at length in their briefs. Plaintiffs maintain that numerous constitutional provisions proscribe a litigation tax that is collected for pur-

poses unrelated to the court system. Defendants and intervenors reject this position and emphasize that filing-fee statutes have consistently withstood constitutional challenges. Citing a number of cases in which this court has upheld fee statutes, defendants stress that no authority exists for the proposition that fees or litigation taxes may be imposed only for court-related purposes. Plaintiffs, however, point out that the cases relied on by defendants all involved statutes which establish charges for operating or maintaining the courts. Therefore, plaintiffs argue, these cases do not bear on the validity of a litigation tax imposed to fund a program unrelated to the judiciary.

A review of prior decisions reveals that plaintiffs correctly characterize the prior cases in which this court has considered constitutional challenges to court filing-fee statutes. Prior cases all involved a fee or tax collected for court-related purposes.

In *Ali v. Danaher* (1970), 47 Ill. 2d 231, the county law-library tax on litigants was upheld despite claims that it violated separation-of-powers principles (Ill. Const. 1870, art. III); impaired litigants' rights to obtain justice freely (Ill. Const. 1870, art. II, sec. 19); and conflicted with the guarantee that revenue laws would be imposed uniformly (Ill. Const. 1870, art. IX, sec. 1). In rejecting these claims, this court had no occasion to state that the tax is sound because its purpose is court related. Nevertheless, the relationship of county law libraries to the court system is clear. According to the statute authorizing the tax, funds collected for the libraries could only be disbursed on the order of a majority of a county's circuit court judges. (Ill. Rev. Stat. 1969, ch. 81, par. 81.) The statute required that libraries supported by the tax be made freely available to "all licensed Illinois attorneys, judges, magistrates and other public officers" (Ill. Rev. Stat. 1969, ch. 81, par. 81), as well as to other members of the public. "[I]t is clear," this court noted, "that the presence of such facilities is

conducive to a proper and even improved administration of justice, which benefits every litigant." *Ali v. Danaher* (1970), 47 Ill. 2d 231, 237.

The *Ali* decision was grounded on principles from earlier cases where this court upheld statutes imposing fees on litigants who file jury demands. (See 47 Ill. 2d 231, 235-37.) Plaintiffs attacking the validity of jury-demand fee statutes usually relied primarily on the right of trial by jury (Ill. Const. 1970, art. I, sec. 13; Ill. Const. 1870, art. II, sec. 5). See *People ex rel. Flanagan v. McDonough* (1962), 24 Ill. 2d 178 (Chicago municipal jury-fee ordinance questioned); *Huber v. Van Schaack-Mutual, Inc.* (1938), 368 Ill. 142; *Williams v. Gottschalk* (1907), 231 Ill. 175. *Cf. Fried v. Danaher* (1970), 46 Ill. 2d 475 (jury demand fee, nonrefundable even if jury is never impaneled, sustained against equal protection and due process challenges).

In each of these cases, the fee statute was sustained on the ground that no constitutional provision guarantees the right to litigate without reasonable expense. None of the cases required this court to comment on the obvious relationship between jury fees or taxes and the court system. See also *Sanko v. Carlson* (1977), 69 Ill. 2d 246, where a fee for filing tax objections, collected to defray court expenses, but imposed only on litigants in counties with a population of one million or less, was upheld against numerous constitutional challenges.

With each prior case involving a filing fee or tax collected for a court-related purpose, there was no need to decide whether that purpose was a necessary element of the challenged statute's constitutionality. However, we now conclude that court filing fees and taxes may be imposed only for purposes relating to the operation and maintenance of the courts. We consider this requirement to be inherent in our Illinois constitutional right to obtain justice freely.

In reference to the provision that secures this right, our

court has often stated:

" ' "*** The constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from the imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law or impede the due administration of justice;***." ' " (*Ali v. Danaher* (1970), 47 Ill. 2d 231, 236 (quoting *Williams v. Gottschalk* (1907), 231 Ill. 175, 179, and *Adams v. Corriston* (1862), 7 Minn. 456, 461); see also *Sanko v. Carlson* (1977), 69 Ill. 2d 246, 250.)

Applying these principles to the case at bar, we conclude that the challenged $5 tax interferes unreasonably with plaintiffs' access to the courts. Dissolution-of-marriage petitioners should not be required, as a condition to their filing, to support a general welfare program that relates neither to their litigation nor to the court system. If the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts.

Defendants and intervenors argue alternatively that the statute in question is valid even if it must have a court-related purpose. They point out that victims of domestic violence receive support and counseling from the shelters and programs funded by the $5 tax. These services, they reason, enable victims to use the court system more efficiently in much the way that a county law library improves the administration of justice. The moral and emotional support provided enhance some victims' resolve to obtain relief in the courts, while preventing others from filing cases that they are not yet ready to pursue.

We have no reason to doubt that domestic shelters and programs operate in precisely the manner that defendants and intervenors describe. We find, however, that the relationship asserted is simply too remote to save the $5 tax from its constitutional shortcomings. If the domestic violence services are deemed sufficiently court related to vali-

date the funding scheme, countless other social welfare programs would qualify for monies obtained by taxing litigants.

Plaintiffs also contend, and the trial court held, that the $5 tax statute violates the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2). Plaintiffs claim that, although the tax collected is nominal in amount, the statute arbitrarily imposes the burden of funding a general welfare program on a narrow group of matrimonial litigants. According to plaintiffs, the statute therefore deprives them of property without due process of law. We agree that the statute is unconstitutional in this respect.

To be a valid exercise of the police power, an act of the legislature must bear a reasonable relationship to the public interest sought to be protected, and the means adopted must be a reasonable method of accomplishing the chosen objective. Due process principles operate to limit the police power only to the extent that the power is arbitrarily or unreasonably used. *People v. Brown* (1983), 98 Ill. 2d 374, 380 (quoting *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453); *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 77.

We focus here on the means that the legislature chose to fund domestic violence shelters and programs. These services are available to all adults and their dependents who are the subjects of domestic violence. (Ill. Rev. Stat. 1981, ch. 40, par. 2402.) As defined by statute, domestic violence can occur between any family or household members. (Ill. Rev. Stat. 1981, ch. 40, par. 2401(a).) Not surprisingly, then, there is no requirement that recipients of the services be either married or divorced. Nevertheless, the legislature chose a tax on petitioners for dissolution of marriage as a means of funding the shelters and programs. We consider this choice to be an arbitrary use of the police power, inconsistent with due process guarantees.

We have discussed the due process issue in light of the

exercise of the police power of the State. Whether the additional filing fee provided for by the statute is imposed under the police power or the power to tax, the result we reach is the same. Indeed, a single statute may include the exercise of both the police power and the power to tax. (71 Am. Jur. 2d *State and Local Taxation* sec. 69, at 396 (1973).) For purposes of this opinion, we need not attempt to distinguish between these two essential powers of government. In the exercise of the power to tax, as in the exercise of the police power, the power may not be exercised arbitrarily and the classification of those taxed must be reasonable. (See *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 45-46.) Likewise, the 1970 Constitution of this State provides:

> "In any law classifying the subjects or objects of nonproperty taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, sec. 2.

An unreasonable or arbitrary classification for tax purposes places upon the members of a class a burden not shared by others and is violative of due process, as well as equal protection, guaranteed by our Constitution. Ill. Const. 1970, art. I, sec. 2.

We can find no rational basis for imposing this tax on only those petitioners filing for dissolution of marriage, thereby causing members of that class to bear the cost of maintaining the public welfare program provided, while excluding other classes of taxpayers.

There is a certain overlapping and intertwining of the issues we have discussed. In light of our holding on these issues, it is unnecessary for us to consider other challenges to the validity of the statute.

For the reasons above stated, we affirm the judgment of the circuit court of Cook County and remand the case to that court for further proceedings.

*Judgment affirmed;*
*cause remanded.*