Southview Co-operative Housing Corp. *v.* Rent Control Board of Cambridge.

SOUTHVIEW CO-OPERATIVE HOUSING CORPORATION & others [1]
*vs.* RENT CONTROL BOARD OF CAMBRIDGE.

Middlesex. May 8, 1985. — December 17, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & O'CONNOR, JJ.

*Administrative Law,* Regulations, Agency. *Rent Control,* Filing fees. *Municipal Corporations,* Rent control, Fees. *Cambridge.*

Certain charges assessed against landlords by the rent control board of Cambridge in connection with their petitions for individual rent adjustments, which met the board's costs occasioned by the petitions and which were intended by the board as a method of making up for its budgetary shortfall due to the enactment of St. 1980, c. 580 (Proposition 2½), were within the broad grant of authority given the board by St. 1976, c. 36. [399-401]

Certain charges assessed against landlords by the Rent Control Board of Cambridge in connection with their petitions for individual rent adjustments, which were intended by the board as a method of making up for its budgetary shortfall due to the enactment of St. 1980, c. 580 (Proposition 2½), constituted fees, rather than taxes, where the beneficiaries of the services provided by the board were the landlords seeking the individual rent adjustments rather than the general public, where the fees were only imposed on those who chose to utilize the board's services, and where the fees, unlike taxes, only covered the board's reasonably anticipated costs of providing the services for which the fees were charged. [402-404]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on June 4, 1982.

On appeal to the Superior Court Department the case was heard by *Edward M. Ginsburg,* J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen B. Deutsch* for the defendant.

---

[1] Arsenal Square Trust, Alpha Trust, and Robert A. Malloy.

*David G. Hanrahan* (*Robert S. Sinsheimer* with him) for the plaintiffs.

O'CONNOR, J. The plaintiffs, owners of property subject to rent control in the city of Cambridge, brought this action in the Cambridge Division of the District Court, seeking a declaration that (1) certain charges assessed against them by the rent control board of Cambridge (board) in connection with petitions for individual rent adjustments were unlawful, and (2) the plaintiffs are entitled to reimbursement of the sums they paid.[2] A judge of that court determined that the board was not authorized to assess the charges, and the board appealed to the Superior Court, pursuant to G. L. c. 231, § 97 (1984 ed.). After a trial de novo, as provided by that statute, a judge in the Superior Court also held that the charges were not authorized. He ruled that no charges of any kind were authorized by St. 1976, c. 36. He also concluded that, even if the statute be construed as authorizing the board to impose fees for filing individual rent adjustment petitions, the charges here were not constitutionally permissible "fees" but instead were impermissible taxes. The board appealed to the Appeals Court and we transferred the case here on our own motion. We reverse.

Statute 1976, c. 36, entitled, "An Act enabling the city of Cambridge to continue to control rents and evictions," establishes a rent control board with authority to regulate residential rents in Cambridge. Section 6 of the act establishes maximum rents for all controlled units in the city. Section 7 requires the board to make periodic adjustments to the maximum rent to ensure that each rental unit yields a "fair net operating income." In addition, § 9 authorizes the board to issue eviction certificates. Section 5 (*c*) directs the board to "promulgate such

---

[2] Statute 1976, c. 36, § 10 (*a*), provides that "[a]ny person who is aggrieved by any action, regulation or order of the [rent control board] may file a complaint against the board in the [Cambridge Division of the District Court Department] . . : . Said district court shall have exclusive original jurisdiction over such proceedings and shall be authorized to take such action with respect thereto as is provided in the case of the Superior Court under the provisions of chapter two hundred and thirty-one A of the General Laws . . . . All orders, judgments and decrees of said district court may be appealed as is provided in the case of a civil action in said district court."

396 Mass. 395 397

Southview Co-operative Housing Corp. v. Rent Control Board of Cambridge.

policies, rules and regulations as will further the provisions of this act," and § 5 (*e*) provides that "the board shall have the power to issue orders and promulgate regulations to effectuate the purposes of this act."

The primary mechanism that the board uses to adjust maximum rents is the "general adjustment," a percentage increase or decrease in the maximum rent that applies to all or to a large class of controlled units in the city. See St. 1976, c. 36, § 8 (*b*). In addition, a landlord who is dissatisfied with the maximum rent established for a particular unit or group of units may petition the board for an individual adjustment to the maximum rent. St. 1976, c. 36, § 8 (*a*). A petition for an individual adjustment based on an increase in operating expenses is governed by the board's regulation series 72. A petition for an individual adjustment based on capital improvements is governed by regulation series 75 and 76.

Before the 1981-1982 fiscal year, the board's operations were entirely financed by appropriation by the city council. No charges were imposed for filing rent adjustment petitions. Following the enactment of St. 1980, c. 580, commonly known as Proposition 2½, the city manager informed the board that city funds would not be available at previous levels and that the board's budget should reflect a reduction in city funds to approximately seventy-five per cent of the prior level. The board submitted a budget for 1981-1982 with a financing plan in which approximately seventy per cent of the budget would be supported by intergovernmental revenues and approximately thirty per cent would be supported by charges for services. The city council approved the budget with the proposed financing plan.

On June 18, 1981, the board adopted regulation 30.01, which established a schedule of filing charges. The regulation required the payment of one and one-half per cent of the total annual maximum rents but not less than $50 for filing a petition for an individual rent adjustment based on regulation series 72. It imposed a charge of one per cent of the total cost of capital improvements but not less than $20 for filing a petition for an individual rent adjustment based on regulation series 75 or

76. The board's policy was to permit the landlord to pass the filing charges on to the tenants as part of the rent over a three-year period, without interest. Each of the plaintiffs is a landlord who filed a petition for an individual rent adjustment and paid the required charges in accordance with regulation 30.01. The charges paid by the plaintiffs are set forth in the margin.[3]

The plaintiffs correctly do not contend that a statute purporting to authorize the board to establish filing fees for individual rent adjustment petitions commensurate with the cost to the board occasioned by the petitions would be unconstitutional. Their contention is simply that St. 1976, c. 36, does not manifest a legislative intent to grant the board that authority. They also contend that, even if that authority was granted, the charges actually imposed by the board pursuant to the fee schedule adopted on June 18, 1981, are unrelated to the cost of the services occasioned by the petitions, and therefore the charges constitute taxes and, for that reason, are unlawful. The defendant board agrees that the Legislature could not constitutionally authorize the board to impose taxes, but they contend, contrary to the plaintiffs' assertions, that St. 1976, c. 36, authorizes them to impose filing fees — fees commensurate with the cost of the services occasioned by the filing, and they contend that the regulation in question operates to impose only fees — not taxes. There are two questions for us to answer, therefore: (1) By enacting St. 1976, c. 36, did the Legislature intend to authorize the board to charge fees to meet the board's costs occasioned by the rent adjustment petitions; and (2) If that was the Legislature's intention, were the charges that were actually imposed reasonably related to the costs incurred.

---

[3] a. *Southview Co-operative Housing Corporation*: $6,200 for an application under regulation series 72 covering 104 units.

b. *Arsenal Square Trust*: $3,023 for an application under regulation series 72 covering 56 units; $86, $32, and $169, respectively, for three applications under regulation series 76.

c. *Alpha Trust*: $44.17 for an application under regulation series 76.

d. *Robert A. Malloy*: $298.44 for an application under regulation series 72 covering 6 units; $85.05 for an application under regulation series 76.

396 Mass. 395                                        399

Southview Co-operative Housing Corp. *v*. Rent Control Board of Cambridge.

Statute 1976, c. 36, §§ 5 (*c*) & (*e*), authorize and direct the board to promulgate regulations in furtherance of the purposes of that act. Reasoning that the board's authority under c. 36 is limited to "substantive regulation . . . necessary to effectuate the purposes of the [act]," and that the regulation requiring the payment of filing fees according to a prescribed schedule was not such a regulation, the trial judge concluded that the act did not confer authority on the board to establish filing fees. He also concluded that the rule that "a properly promulgated regulation is accorded 'all rational presumptions in favor of [its] validity . . .,' *Altschuler* [v. *Boston Rent Bd.*, 12 Mass. App. Ct. 452, 467 (1981)], quoting *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 525 (1979), applies only to regulations which involve an agency's substantive area of expertise" and therefore does not apply to the fee-setting regulations. We disagree with the trial judge.

The principal indication of legislative intent is the language of the statute. *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242 (1985). The act contains no language limiting the board's authority to the promulgation of "substantive" regulations. The board's regulatory authority conferred by §§ 5 (*c*) & (*e*) of the act is expressly limited only by the requirement that the board's regulations advance the purposes of the act. Therefore, a construction of §§ 5 (*c*) & (*e*) as authorizing any constitutionally permissible regulation which promotes the goal of rent control accords with the ordinary usage of the statutory language. Moreover, this construction of the statute comports with the established principle that "where an administrative agency is vested with broad authority to effectuate the purposes of an act the validity of a regulation promulgated thereunder will be sustained so long as it is reasonably related to the purposes of the enabling legislation. *Levy* v. *Board of Registration & Discipline in Medicine, supra* at 524, quoting *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). Accepting the plaintiffs' assertion, and the trial judge's finding, that the filing fee regulation was the board's method of making up for its budgetary shortfall due to Proposition 2½, it cannot reasonably be contended that the

regulation does not promote the purposes of the act. Surely, it cánnot properly be said that there was no rational basis for that conclusion. See *Borden, Inc.* v. *Commissioner of Pub. Health,* 388 Mass. 707, 720-724, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette,* 464 U.S. 936 (1983).

In *Commonwealth* v. *Plaisted,* 148 Mass. 375, 382 (1889), we held that an express statutory grant to a municipality or agency of authority to regulate includes authorization to require licenses and licensing fees "to cover reasonable expenses incident to the enforcement of the rules." See *Opinion of the Justices,* 250 Mass. 591, 602 (1924) ("A license fee may be exacted as a part of or incidental to regulations established in the exercise of the police power"); *Commonwealth* v. *Clay,* 224 Mass. 271, 274 (1916) ("the power to regulate may include the requirement of taking out a license and the payment of a license fee"). The plaintiffs argue that the above cases have no bearing on the present case because those cases, unlike this one, involved fees incident to the issuance of a license. The rationale of those cases is not so limited however. Licensing is simply a means of regulating. If the authority to regulate includes the authority to require licenses and licensing fees, the authority to regulate also includes the authority to exact fees to defray the cost of conducting hearings and performing other services in conjunction with individual rent adjustment petitions. As this court observed in *Boston* v. *Schaffer,* 9 Pick. 415, 419 (1830), "[t]owns are put to expense in preserving order, and it is proper they should be indemnified for inconveniences or injuries occasioned by employments of this nature." As we recently observed in *Emerson College* v. *Boston,* 391 Mass. 415, 424 (1984), licensing fees are but one type of permissible regulatory fee. *Commonwealth* v. *Stodder,* 2 Cush. 562 (1848), relied on by the plaintiffs, does not hold otherwise. In that case, an attempt was made to impose license fees in various amounts under a statute authorizing the Boston city council to regulate certain vehicles. Although in that case it was held that the agency was not empowered to require licenses, the court's holding that requiring the payment of fees

396 Mass. 395                                                                401

Southview Co-operative Housing Corp. *v.* Rent Control Board of Cambridge.

was impermissible was based not on the principle that the authority to regulate does not include authority to exact fees, but instead was based on the conclusion that the contested charges were taxes and not fees. *Id.* at 572-573. See *Warburton v. Quincy,* 309 Mass. 111, 116 (1941).

The trial judge concluded that cases involving licensing fees do not support the board's argument that St. 1976, c. 36, authorized the board to impose fees for filing rent adjustment petitions. He reasoned that "[l]icensing fees involve conduct that is recognized as a privilege, while . . . fair net operating income is a landlord's right and . . . application for individual rent adjustment is the only process by which a fair net operating income may be obtained under some circumstances." The plaintiffs concede that that reasoning is faulty. In *Commonwealth v. Plaisted, supra,* the conduct requiring licensing and a licensing fee was a religious parade. Although the right to hold a religious parade is protected by the First Amendment to the United States Constitution, this court held that a fee could be imposed to cover reasonable expenses incident to permissible regulation. *Id.* at 381-382. Similarly, in *Cox v. New Hampshire,* 312 U.S. 569 (1941), the Supreme Court held that, although fundamental rights of free speech and assembly were involved, a municipality could impose a fee for a license to hold a parade in the streets designed to meet expenses incident to the issuance of such licenses and the maintenance of public order in the matter licensed. *Id.* at 576-577. The plaintiffs do not allege that they lack the resources to pay the filing fees and thus are unable to pursue their rights. Compare *Boddie v. Connecticut,* 401 U.S. 371 (1971). Nor do the plaintiffs allege that the fees are so excessive as to deprive the landlord of a "fair net operating income."[4] We conclude, therefore, that the board was authorized to charge fees in connection with the services it performed, and we turn to the question whether the charges actually assessed were indeed fees or were in reality taxes.

---

[4] Such an argument would be unpersuasive in light of the board's policy permitting landlords to pass the fees on to their tenants over a three-year period, although without interest.

In *Emerson College* v. *Boston, supra* at 424-425, we observed that "fees share common traits that distinguish them from taxes: they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society,' . . .; they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge . . . , and the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses" (citations omitted). Applying each of these factors to the charges imposed by the board, we conclude that the charges are fees and not taxes.

First, the beneficiaries of the services provided by the board are the landlords seeking individual rent adjustments. The services for which the fees are imposed are thus "sufficiently particularized as to justify distribution of the costs among a limited group . . . rather than the general public." *Emerson College* v. *Boston, supra* at 425. Compare *id.* at 425-426 (benefits of augmented fire services accrue to the public at large as well as to the owners of the buildings).

Second, although it is true, as the plaintiffs argue, that, if landlords believe they are not receiving fair rents and want to obtain individual rent adjustments, they must pay the fees, the fees nevertheless are only imposed on those who choose to utilize a particular governmental service. That is also true with respect to charges required for licenses to hold parades. Such charges, if reasonably calculated to do nothing more than compensate a governmental agency for its services, are fees, not taxes, even though they must be paid in order that a right may be enjoyed. The position of the landlords is unlike that of the property owners in *Emerson College* v. *Boston, supra*, who could not choose to forgo fire protection and thus were compelled to pay for the availability of augmented fire fighting services. *Id.* at 426.

The final trait that distinguishes fees from taxes is that fees, unlike taxes, only cover the agency's reasonably anticipated costs of providing the services for which the fees are charged. In determining whether regulatory charges are fees rather than

taxes, reasonable latitude must be given to the agency in fixing charges to cover its anticipated expenses in connection with the services to be rendered. See *Opinion of the Justices,* 250 Mass. 591, 602 (1924) ("A license fee may be exacted as a part of or incidental to regulations established in the exercise of the police power. Such a fee commonly is commensurate with the reasonable expenses incident to the licensing and all that can rationally be thought to be connected therewith. The amount of the fees in such connection doubtless would not be scrutinized too curiously even if some incidental revenue were obtained. *Henrick* v. *Maryland,* 235 U.S. 610, 622 [1915]"). The burden of proving that the charges are not fees rests on those who challenge their legality. 3 C.J. Antieau, Municipal Corporations Law § 24.24, at 24-54 ("Everywhere the burden of proof is upon the protestant to show the lack of any reasonable relation between the fee and the costs of regulating . . . ").

The judge found that "[i]n basing its fee schedule on percentages of gross rents and capital improvements, the Board fails to distinguish multi-unit buildings with low or mid-level rents from buildings with fewer units and high rents. Although the Board's fee schedule may be appropriate as a reflection of direct costs with respect to high rent units, it cannot be justified with respect to low or mid-level rent units which happen to be located in multi-unit buildings. This court finds, therefore, that the fee schedule as a whole does not accurately apportion the Board's direct costs of processing individual rent adjustment applications. In light of the various factors that contribute to the Board's cost, the fee schedule is too simplistic and is thus not rationally related to the cost of processing individual applications."

The judge's conclusion that "the fee schedule as a whole does not accurately apportion the Board's direct costs of processing individual rent adjustment applications" suggests that his attention was focused primarily on the question whether the burden placed on landlords owning different types of real estate was unevenly and unfairly distributed. That fact alone, however, would not be relevant to the question whether the charges were fees or taxes, and is not an issue fairly framed

by the pleadings. Since the critical question is whether the filing charges were reasonably designed to compensate the board for anticipated expenses, we interpret the judge's finding to be that the filing charges for petitions to adjust the rents of low or moderate rent units in large buildings exceeded the reasonably anticipated cost of processing those petitions, resulting in the unlawfulness of the entire fee schedule.[5] That finding cannot stand, however. There was no evidence that the charges for filing petitions relating to low or moderate rent units in multi-unit buildings exceeded either the direct or the total costs of the services occasioned by those petitions.[6] Furthermore, there was no finding, nor was there evidence, that the charges for filing petitions that might appropriately be placed in a different category exceeded costs, or that the total charges for all petitions exceeded the total cost of processing them. Therefore, the plaintiffs failed to sustain their burden of proving that the filing charges constitute taxes.

The plaintiffs are not helped by the fact that the collected fees were deposited in the general fund of the city, as the law requires, or by the fact that the challenged fee schedule was established to make up for a shortfall due to Proposition 2½. Every fee charged by a regulatory agency will reduce the amount of funding that must come from general government revenues, and thus will substitute for funds that would otherwise have to be raised through taxes. But, clearly, all such regulatory charges are not taxes.

---

[5] We note that the judge's findings refer to the board's "direct" costs. To determine whether regulatory charges are fees rather than taxes, it is appropriate to compare the charges with all costs, including direct and indirect (overhead) costs.

[6] We need not decide, therefore, whether the fact that filing fees imposed in connection with a specific, limited category of petitions exceed the costs related to those petitions would defeat a fee schedule providing for charges for all rent adjustment petitions that total less than the total cost to the agency of providing all the services required by rent adjustment petitions or of administering the rent control statute generally.

We reverse the judgment and we remand the case to the Superior Court for the entry of a judgment declaring that the filing fees were lawful.

*So ordered.*