924 P.2d 741

**NEW MEXICO MINING ASSOCIATION,**
**Plaintiff–Appellant,**

v.

**NEW MEXICO MINING COMMISSION,**
**Defendant–Appellee.**

**No. 16927.**

Court of Appeals of New Mexico.

Aug. 28, 1996.

Robert L. Rivera, Executive Director, New Mexico Mining Association, Santa Fe, for Plaintiff–Appellant.

Tom Udall, Attorney General, Laura Fashing, William R. Brancard, Assistant Attorneys General, Santa Fe, for Defendant–Appellee.

*OPINION*

DONNELLY, Judge.

1. In this case we examine the authority of a state entity, the New Mexico Mining Commission (Commission), to adopt a rule imposing a surcharge on certain fees promulgated by it in order to partially reimburse the Department of Game and Fish (DG & F) for assistance in implementing the State Mining Act. We hold that the rule and fees in question come within the ambit of the Commission's statutory authority and that the proposed fund transfers are valid. We therefore affirm.

*FACTS*

2. On September 5, 1995, the Commission scheduled a public hearing on proposed amendments to the fee schedule imposed by the Commission pursuant to the New Mexico Mining Act (Mining Act), NMSA 1978, Sections 69–36–1 to –20 (Repl.Pamp.1993). The New Mexico Mining Association (Association) appeared at the public hearing and opposed the adoption of certain fee provisions contained in the proposed rules. The amend-

ments to the rule considered at the public hearing were adopted by the Commission following an earlier court challenge by the Association which resulted in a determination that portions of the application and permit fees previously adopted by the Commission were illegal. *See Old Abe Co. v. New Mexico Mining Comm'n,* 121 N.M. 83, 908 P.2d 776 (Ct.App.) (invalidating those portions of the rules adopted by the Commission that did not specify determinate fees), *cert. denied,* 120 N.M. 828, 907 P.2d 1009 (1995).

3. Following the hearing on the proposed revised rules, the Commission met again on October 27, 1995, and adopted additional amendments, including a new version of Rule 205. The amendments, including Rule 205, were approved by the Commission and filed with the State Records Center pursuant to the State Rules Act, NMSA 1978, Sections 14–4–1 to –11 (Repl.Pamp.1995), on December 1, 1995.[1] In addition to adopting Rule 205, the Commission also entered into a joint powers agreement with the DG & F, whereby the DG & F agreed to provide personnel and technical expertise in order to assist the Commission in carrying out certain aspects of the Mining Act.

4. On December 4, 1995, the Association appealed the adoption of Rule 205 to this Court in accordance with the provisions of Section 69–36–16.

*VALIDITY OF APPEAL*

5. We first examine a threshold issue involving the validity of the Association's appeal. The Commission argues that the appeal is procedurally flawed and that this Court is without jurisdiction to review the matters asserted herein because the notice of appeal filed by the Association on December 4, 1995, refers to an earlier version of Rule 205, which was filed with the State Records Center on November 2, 1995, and not the revised version of the rule adopted by the Commission on November 29, 1995, and filed with the State Records Center on December 1, 1995.

1. Rule 205 was originally denominated as Rule 2.4 and subsequently as Rule 2.5 by the Commission; however, the New Mexico Mining Act rules were later reformatted in order to comply with the State Rules Act, Section 14–4–7.2, thereby resulting in a third renumbering of the rule as Rule 205. *See* Title 19, New Mexico Administrative Code, 205 (10.2).

6. Comparison of the language of Rule 205 filed on November 2, 1995, with that filed on December 1, 1995, indicates that both versions of the rule provided for the imposition of a surcharge upon application fees or annual fees promulgated by the Commission pursuant to its statutory authority under the Mining Act. Although the Commission correctly notes that following the filing of the rule, the language of the rule underwent partial revision following a public hearing conducted pursuant to Section 69–36–8, both the earlier and later versions of the rule provide for the imposition of a surcharge upon application fees and annual fees for the purpose of compensating the DG & F for its costs in implementing the Mining Act. Because the basis of the Association's appeal involves the question of whether the Commission possesses the legal authority to assess a surcharge in order to obtain funds to reimburse another state agency for technical assistance, and the modified language of the revised rule does not alter or render moot the underlying issue of the Commission's authority to adopt such rule or to apply the monies derived therefrom, we conclude that the Association's appeal withstands the Commission's challenge. *See In re Sanders*, 108 N.M. 434, 436, 773 P.2d 1241, 1243 (Ct.App. 1989) (court may review issue asserted on appeal if issue sought to be raised is capable of repetition and involves question of public importance).

7. Under the record before us, it is clear that the December 4, 1995, appeal by the Association was timely filed following the Commission's initial adoption and filing of the original version of Rule 205 on November 2, 1995, and the November 29, 1995, subsequent revision of the rule. Thus, under the circumstances existing here, we conclude that the Association's appeal survives the technical challenges raised by the Commission.[2] *See Trujillo v. Serrano*, 117 N.M. 273, 277, 871 P.2d 369, 373 (1994) (court will construe rules relating to appeals liberally to permit

cases to be determined on merits where it can be done without causing injustice).

## STANDARD OF REVIEW

■ 8. The appellate standard of review applicable to the issues raised by the Association is set forth in the Mining Act. Section 69–36–16(F) states: "Upon appeal the court shall set aside the regulation, order or other action only if it is found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." *See also Old Abe Co.*, 121 N.M. at 88, 908 P.2d at 781. A party challenging a rule adopted by an administrative agency has the burden of establishing the invalidity of the rule or proposed regulation. *Tenneco Oil Co. v. New Mexico Water Quality Control Comm'n*, 107 N.M. 469, 473, 760 P.2d 161, 165 (Ct.App.1987), *cert. denied sub nom. Navajo Ref. Co. v. New Mexico Water Quality Control Comm'n*, 106 N.M. 714, 749 P.2d 99 (1988).

## RULE–MAKING AUTHORITY

9. We next examine the Commission's statutory rule-making authority enacted by the Legislature.

■ 10. The Association challenges the authority of the Commission to adopt Rule 205 because it contends that the Mining Act does not expressly authorize the Commission to adopt a rule imposing a fee for the purpose of helping to defray the cost of the DG & F's expenses in assisting the Commission to implement the Mining Act.

11. The final version of Rule 205, as adopted by the Commission and filed with the State Records Center on December 1, 1995, states:

Surcharge for Department of Game and Fish Activities

   A. To compensate the Department of Game and Fish for its costs required

---

2. The Association also argues that the Commission did not properly submit and circulate the final language of the original version of Rule 205 for public comment as required by Section 69–36–8. After the Commission adopted the rule, however, the Commission granted the Association's motion to reconsider. At this time the

Association had an opportunity, which it used, to present its arguments and concerns. The Commission then adopted a modified version of the rule. Thus, the Commission substantially complied with Section 69–36–8 and the Association has failed to show how it was harmed by such procedure.

to implement its involvement in implementing the Act, a percentage surcharge shall be added in the same percentage to each of the above application and annual fees. This surcharge shall be 4.5 percent of fees collected in FY 96 to be used in FY 97.

B. *Payment.* On a quarterly basis, the Director shall reimburse the Department of Game and Fish, only from this surcharge, for its reasonably necessary costs incurred under the Department['s] involvement with implementation of the Act.

■ 12. Section 69–36–7(M) of the Mining Act provides in applicable part that the Commission is authorized to "establish by regulation a schedule of annual administrative and permit fees, *which shall equal ... the estimated costs of [the] administration, implementation, enforcement, investigation and permitting pursuant to the ... Mining Act.*" (Emphasis added.) This provision discloses a legislative intent that the Commission, in adopting regulatory mining application fees and annual fees pursuant to Section 69–36–7(M) of the Mining Act, transfer the cost of processing and implementing certain application and permit fees to the parties seeking the issuance and approval of those mining activities. In enacting this section, the legislature expressly directed that the Commission fix the amount of fees promulgated by it at a level which equals the estimated actual expense of investigating, reviewing, and enforcing certain applications or permits issued pursuant to the Mining Act so that this portion of the Commission's responsibilities under the Act would be largely self-supporting. *Id.* Here, it is clear that the incidence of the fees in question falls upon the parties who seek to carry out mining activities within New Mexico.

13. By express legislative provision, Section 69–36–19(A) creates the state Mining Act Fund and directs that "[a]ll money received by the state from permit applicants, permit holders [or other sources] shall be ... deposited in the fund." Pursuant to this statutory power, the Secretary of the Energy, Minerals and Natural Resources Department (Secretary) is authorized to expend

monies from such fund "to carry out the purposes of the ... Mining Act." *Id.* The Mining Act also provides that the director of the Mining and Minerals Division of the Energy, Minerals and Natural Resources Department (Department) is authorized to enter into agreements with both federal and state agencies for coordinating the review and issuance of "all necessary permits to conduct ... mining operations and exploration in New Mexico." Section 69–36–9(B). The director of the Mining and Minerals Division is also invested with the authority pursuant to a joint powers agreement to contract with the DG & F for assistance in carrying out these same duties. *See* NMSA 1978, §§ 11–1–1 to –7 (Repl.Pamp.1994); *see also* § 11–1–5(C) (authorizing public agencies or entities to enter into contracts under the Joint Powers Agreements Act to carry out "the common power specified in the agreement").

14. In adopting the Mining Act the legislature declared that the Act was intended, among other things, to promote "responsible utilization and reclamation of lands" affected thereby. Section 69–36–2. The Act also directs that entities seeking to initiate mining operations within New Mexico are required, under Section 69–36–5(B)(6), to secure a site assessment plan, including "a description of wildlife and wildlife habitat at and surrounding the mining operation and an analysis of the mining operation's impact on that wildlife and wildlife habitat." Additionally, the Act requires that the Commission "establish by regulation permit and reclamation requirements for *new mining* operations [including requirements that will] ... assure protection of human health and safety, the environment, wildlife and domestic animals." Section 69–36–7(H)(2).

■ 15. Rules adopted by an administrative agency will be upheld if they are in harmony with the agency's express statutory authority or spring from those powers that may be fairly implied therefrom. *Howell v. Heim,* 118 N.M. 500, 504, 882 P.2d 541, 545 (1994); *AA Oilfield Serv., Inc. v. New Mexico State Corp. Comm'n,* 118 N.M. 273, 277, 881 P.2d 18, 22 (1994). Similarly, regulations adopted by an agency are presumed to be

valid if they are shown to be reasonably consistent with the statutory purposes of the agency. *Old Abe Co.*, 121 N.M. at 86, 908 P.2d at 781. While it is clear that administrative agencies may properly exercise those powers that are within the scope of the authority delegated to them, they may not, however, amend or enlarge their authority through the device of promulgating rules and regulations. *Chalamidas v. Environmental Improvement Div.*, 102 N.M. 63, 66, 691 P.2d 64, 67 (Ct.App.1984).

16. Applying the above rules to the issue before us, we conclude that the provisions of Rule 205, and the fees established thereunder, are consistent with the authority vested in the Commission under the provisions of the Mining Act. The charge imposed under Rule 205 is in the nature of an increased application or permit fee. Because the Commission in its discretion had the authority to either adopt a rule which increased the amount of either the application fee or the annual fee, or to accomplish the same purpose by imposing a reasonable surcharge on parties seeking to file an application or to obtain a permit, absent a showing of an abuse of discretion we are not free to substitute our judgment for the means selected by the Commission. *See Old Abe Co.*, 121 N.M. at 86, 908 P.2d at 781 (public agencies invested with discretion in carrying out their rule-making function, and a court may not substitute its judgment concerning the wisdom underlying the adoption of such rules, absent a showing that there has been an abuse of an agency's discretion).

*LEGALITY OF FUND TRANSFERS*

■ 17. The Association also argues, inter alia, that because the Mining Act does not expressly appropriate funds to the DG & F, the Department is prohibited from paying the DG & F any monies received by the Commission which are derived from fees promulgated by the Commission. We think this challenge, too, must fail. As discussed above, Section 69–36–19(A) expressly authorizes the Secretary to expend monies from the Mining Act Fund to carry out the pur-

poses of the Mining Act. Moreover, the 1995 General Appropriation Act, 1995 N.M. Laws, Chapter 30, expressly provides that "[c]ategory transfers and budget increases from other state funds and internal service funds/interagency transfers are specifically authorized for the department of game and fish." The same Act also contains similar language specifying that "[c]ategory transfers, division transfers and budget increases from other state funds and internal service funds/interagency transfers are specifically authorized for the energy, minerals and natural resources department."[3] Both the Commission and the DG & F are component entities administratively situated within the Department. *See* NMSA 1978, § 9–5A–3 (Repl.Pamp.1994).

18. Reading the provisions of Section 69–36–7(M), which authorize the Commission to adopt reasonable fees placing the cost of implementing the Mining Act upon the entities regulated by the Act, together with the provisions of Section 69–36–19(A), evinces a legislative intent to invest the Commission with general rule-making authority, including the authority to adopt Rule 205, and to authorize the Department to utilize monies derived therefrom in order to reimburse the DG & F for services provided to the Commission in helping carry out the purposes of the Mining Act.

19. We also consider the Association's argument that because the DG & F administers the Wildlife Conservation Act, NMSA 1978, Sections 17–2–37 to –46 (Repl.Pamp. 1995), any assistance rendered to the Commission by the DG & F under the joint powers agreement is essentially duplicative of the responsibilities already imposed upon the DG & F under the Wildlife Conservation Act. In furtherance of this assertion, the Association contends that requiring the mining industry to absorb the cost of providing for fish and wildlife habitat unfairly places the financial burden on the Association to pay the cost of administering the provisions of other state laws contrary to both the

---

**3.** The 1995 General Appropriation Act, 1995 N.M. Laws, Chapter 30, Section 2(C) defines "interagency transfers" to mean "revenue trans-ferred from one state agency to another through contracts or joint powers agreements."

Mining Act and the Wildlife Act. We find this argument unpersuasive.

■ 20. One of the basic objectives underlying the enactment of the Mining Act was to create a regulatory agency charged with the responsibility of minimizing the damage to land which is subject to mining, both while mining activities are being carried out and after the mining operations are closed. *San Pedro Mining Corp. v. Board of County Comm'rs,* 121 N.M. 194, 199, 909 P.2d 754, 759 (Ct.App.1995), *cert. denied,* 121 N.M. 57, 908 P.2d 750 (1996). In order to carry out this legislative purpose, the legislature has specified that the heads of several state agencies or departments, including the director of the DG & F or his designee, serve on the Commission. Section 69–36–6(A)(5). Under both the rules adopted by the Commission and a joint powers agreement, the DG & F is required to provide expertise to the Commission and assist in reviewing mining applications and permits in order to evaluate the effect of mining activity on fish and wildlife in the areas which may be affected by existing or future mining operations.

21. Although we agree with the Association that other state acts impose general responsibilities upon the DG & F for developing and preserving fish and wildlife, nevertheless, the Mining Act imposes specific duties on the DG & F insofar as they relate to the protection of game and fish habitat and state efforts to minimize any negative long-term effect of mining activity on the environment. *See* § 69–36–7(A)(1), (E)(2), (H)(2), & (O). As pointed out by the Commission, the director of the Mining and Minerals Division of the Department is specifically invested with the authority to enter into contracts to carry out the purposes of the Mining Act. Section 69–36–9. Additionally, the director has been given the power of expending monies from the Mining Act Fund to implement the Mining Act. Section 69–36–19(A). In sum, we find nothing in the Mining Act, the Wildlife Conservation Act, or other state laws which preclude the Commission from adopting regulations or fees designed to carry out the purposes of the Act, or which would prohibit the Secretary from authorizing the transfer of the funds to the

DG & F to assist in implementing the Mining Act.

*FEE OR TAX?*

■ 22. The Association further argues that the surcharge imposed by the rule is a tax, not a fee; hence, it contends that the Commission's adoption of Rule 205 is unconstitutional and is an unlawful usurpation of legislative authority. We think it is clear, however, that the surcharge imposed here is a fee, not a tax. Generally, a "fee" is a charge intended to defray, in whole or in part, the expense of regulating or providing a service, benefit or privilege. *See Thrifty Rent–A–Car Sys. v. City & County of Denver,* 833 P.2d 852, 855 (Colo.Ct.App.1992); *City of Kettering v. Berger,* 4 Ohio App.3d 254, 448 N.E.2d 458, 461 (1982); *Utah Restaurant Ass'n v. Salt Lake City–County Bd. of Health,* 771 P.2d 671, 676 (Utah Ct.App.), *cert. denied,* 789 P.2d 33 (Utah 1989); *see also Apodaca v. Wilson,* 86 N.M. 516, 525–26, 525 P.2d 876, 885–86 (1974) (holding municipal sewer and water charges are charges, not taxes).

■ 23. The Association reasons that the fee in question is in reality a tax because it seeks to help fund the DG & F, not the Commission itself. Although the Association correctly notes that, generally, a regulatory fee must not exceed the amount reasonably necessary to cover the costs of performing or regulating the matter in question, evidence presented at the public hearing below was sufficient to establish that the fee in question was reasonable. *See National Cable Television Ass'n v. FCC,* 554 F.2d 1094, 1106 (D.C.Cir.1976) ("fee" is payment for service rendered or privilege bestowed, rather than a revenue measure); *Mills v. County of Trinity,* 108 Cal.App.3d 656, 166 Cal.Rptr. 674, 677 (1980) (if amount of charge unreasonably exceeds value of the services rendered, it will be held invalid); *Crocker v. Finley,* 99 Ill.2d 444, 77 Ill.Dec. 97, 101, 459 N.E.2d 1346, 1350 (Ill1984) (charge having no relation to services rendered, effect of which is to provide general source of revenue held to constitute a "tax"). Moreover, as noted in the Commission's statement of reasons for adoption of the surcharge:

The Commission found that the work of the Game & Fish included activities that were necessary to implement the Mining Act. The Act and the Rules require evaluations of impacts on wildlife and Game & Fish provides the expertise ... for such evaluations....

Game & Fish estimated that Mining Act related activities would require 80% of one FTE [fulltime employee] plus secretarial costs. Game & Fish proposed that 75% of the FTE be funded through other sources and only 25% of the personnel costs for Mining Act activities be funded through fees. The Commission found that the partial funding of one FTE through fees did not exceed the estimated costs of Game & Fish's implementation of the Act.

24. The burden of proving that a regulatory charge is a tax, rather than a fee rests on the party seeking to challenge the legality of the charge. *Southview Coop. Hous. Corp. v. Rent Control Bd.*, 396 Mass. 395, 486 N.E.2d 700, 705 (1985). As observed by the court therein:

[A] trait that distinguishes fees from taxes is that fees, unlike taxes, only cover the agency's reasonably anticipated costs of providing the services for which the fees are charged. In determining whether regulatory charges are fees rather than taxes, reasonable latitude must be given to the agency in fixing charges to cover its anticipated expenses in connection with the services to be rendered.

*Id.* Our review of the record reveals the existence of substantial evidence indicating that the surcharge created by Rule 205 is a fee, not a tax, and that the amount of the fee is reasonable and within the reasonable estimated cost of the contemplated service.

*CONCLUSION*

25. We have examined each of the arguments raised by the Association and conclude that Rule 205 adopted by the Commission is valid and that the challenges mounted against the rule, or the expenditure of the fees derived therefrom, are without merit. The Commission may properly apply and implement the rule.

26. IT IS SO ORDERED.

APODACA, C.J., and BOSSON, J., concur.