**ILLINOIS SPORTING GOODS ASSOCIATION, an Illinois not-for-profit organization; Ronald Straff, an individual; Donald Beltrame, an individual; William Klicka, an individual; and Paul Petersen, an individual, Plaintiffs,**

v.

**COUNTY OF COOK, a body corporate and politic; and Barbara Bruno, in her capacity as Director, Cook County Department of Revenue, Defendants.**

No. 93 C 7403.

United States District Court,
N.D. Illinois, E.D.

Feb. 15, 1994.

---

Royal B. Martin, Jr., William Gibbs Sullivan, Leigh David Roadman, Robert S. Grabemann, Martin, Brown & Sullivan, Ltd., Chicago, IL, for plaintiffs.

Jeffrey S. McCutchan, Connie R. Barba, Cook County State's Attorney's Office, Terry L. McDonald, Asst. States Atty., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiffs Illinois Sporting Goods Association, a not-for-profit organization, and Ronald Straff, Donald Beltrame, William Klicka, and Paul Petersen, who are individual operators of licensed gun shops, have filed a five-count complaint against defendants Cook County and Barbara Bruno, Director of Cook County Department of Revenue, seeking a declara-

tion that the Cook County Firearms Dealer's License and Assault Weapons Ban Ordinance, No. 190061 ("Ordinance") violates the Commerce Clause of the United States Constitution, Article 1, § 8 (Count I); is an invalid exercise of the County's police power under the Illinois Constitution, Article VII, § 6 (Count II); and denies plaintiffs their constitutional rights to procedural and substantive due process and equal protection guaranteed by the Fourteenth Amendment (Counts III, IV and V).

Plaintiffs have filed a motion for a preliminary injunction to enjoin defendants from enforcing Article II of the Ordinance which prohibits the location of gun shops within .5 miles of any school or public park. For the reasons stated below, plaintiffs' motion for a preliminary injunction is granted.

## BACKGROUND

The following facts are undisputed by both parties. On October 19, 1993, the Board of Commissioners of Cook County passed Ordinance No. 190061 entitled "Cook County Firearms Dealer's License and Assault Weapons Ban Ordinance," establishing the licensing procedures for firearms dealers located in Cook County (Article II), and banning the possession of assault weapons in Cook County (Article III). Cook County Board President Richard Phelan signed the Ordinance on November 18, 1993.[1]

Article II of the Ordinance, the article challenged by plaintiffs, makes it unlawful for any person licensed under federal law to engage in the business of dealing in firearms within Cook County without having applied for or obtained a Cook County firearms dealer's license pursuant to the Ordinance by February 15, 1994.[2] Pursuant to Article II, § 2–5(c), the Director of Revenue is not to issue a Cook County firearms dealer's license to any person who is engaged in the business of dealing in firearms or firearm ammunition, or indicates an intention to do so, within .5 miles of the grounds of any school or public park, unless:

(1) the person operates a gun shop upon leased premises where said lease was in effect on September 7, 1993, in which case such person is exempt from this provision, but is exempt only for the remainder of the term of that lease without taking into account any extension or renewal of the terms of such lease made on or after September 7, 1993; or

(2) the person owns the premises to which the license is issued, and owned the premises on September 7, 1993; or

(3) the person does not operate a gun shop as defined in this ordinance; or

(4) the person is engaged in the business of dealing in firearms or firearm ammunition only at gun shows or events.

Article II, § 2–5(c)(1)–(c)(4).

For purposes of the exemptions contained in Article II, § 2–5(c), a "gun shop" is defined in the Ordinance as, "the premises of any federally licensed firearms dealer where the only or primary business or commercial enterprise conducted on the premises is the purchase or sale of firearms or firearm ammunition." Article II, § 2–1(d).

## ANALYSIS

To support the issuance of a preliminary injunction, the plaintiff bears the burden of proving five elements:

(1) no adequate remedy at law;

(2) the existence of irreparable harm if the injunction was not issued;

(3) a reasonable likelihood of success on the merits;

(4) the threatened harm to the plaintiff if the injunction was not issued outweighs the threatened harm an injunction would have on defendant; and

(5) the public interest is best served by granting an injunction.

*Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 608 (7th Cir.1993). While plaintiff is required to prove each element, plaintiff has a "threshold burden" to prove the first three elements. *Kellas v. Lane*, 923 F.2d 492, 493 (7th Cir.1991) (citing *Ping v.*

---

1. A copy of the Ordinance is attached as Exhibit A to *Plaintiff's Complaint*.

2. Article II, Section 2–2(a).

*National Educ. Assoc.*, 870 F.2d 1369, 1371 (7th Cir.1989)). "If the movant can meet this threshold burden, the inquiry then becomes a 'sliding scale' analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits." *Ping*, 870 F.2d at 1371. "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir.1984) (citations omitted).

## I. *No Adequate Remedy and Irreparable Harm*

■■■ Two threshold elements plaintiffs must prove to support the issuance of a preliminary injunction are that plaintiffs have no adequate remedy at law, and that plaintiffs will suffer irreparable harm if the injunction is not issued. In the preliminary injunction analysis these two requirements—irreparable harm and no adequate remedy at law—tend to merge. *See Roland*, 749 F.2d at 386. "The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Id.*

To prove that they have no adequate remedy at law plaintiffs must show that an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered." *Roland*, 749 F.2d at 386. *See also, Kellas v. Lane*, 923 F.2d 492, 496 (7th Cir.1991). To satisfy the requirement of irreparable harm, plaintiffs must show that their harm "cannot be prevented or fully rectified by the final judgment after trial." *Roland*, 749 F.2d at 386.

In *Roland* the Seventh Circuit listed four situations where a damage award may be inadequate:

(1) Plaintiffs may be forced to close their businesses while awaiting final judgment.

(2) Plaintiffs are unable to finance their lawsuit without the revenues from their businesses that defendants are threatening to destroy.

(3) Defendant may become insolvent before a final judgment can be entered.

(4) Plaintiffs' losses make damages difficult to calculate, such as lost business profits.

*Roland*, 749 F.2d at 386. *See also, Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1018 (7th Cir.1990) and *Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 685 F.Supp. 1172, 1181 (D.Kan.1988) and cases cited therein ("Numerous cases support the conclusion that loss of customers, loss of goodwill, and threats to a business' viability can constitute irreparable harm." *Id.*).

In this case plaintiffs argue that if a preliminary injunction is not granted and the Ordinance becomes effective, plaintiffs will suffer significant economic injury, and, most likely, the loss of their businesses due to the difficulty of relocating their businesses in compliance with the requirements of the Ordinance. In addition, plaintiffs claim, citing *Roland*, that the nature of their losses, lost business profits, makes damages difficult, if not impossible, to measure.[3]

The court finds that if the Ordinance takes effect it will threaten the existence of plaintiffs' businesses and any money damages that plaintiffs may be awarded at the time of final judgment may come too late to save their businesses. In addition, the court finds that even if plaintiffs are able to save their businesses, plaintiffs' lost profits will be difficult to calculate. For the above reasons, the court concludes that plaintiffs have no adequate remedy at law and may suffer irreparable harm without the requested injunctive relief.

## II. *Likelihood of Success on the Merits*

■■ The third threshold element plaintiffs must prove to support the issuance of a preliminary injunction is a reasonable likelihood of success on the merits. *See Retired Chicago Police Assoc.*, 7 F.3d at 608. To demonstrate a reasonable likelihood of success on the merits, plaintiffs must show that their chance of prevailing is "better than negligible." *Kinney v. International Union*

---

**3.** Defendants, in their response brief, presented no facts or argument opposing plaintiffs' position as to the irreparable harm plaintiffs will suffer or the absence of an adequate remedy at law.

*of Operating Engineers,* 994 F.2d 1271, 1275 (7th Cir.1993).[4]

### A. *Commerce Clause*

█ Plaintiffs argue that the licensing procedures contained in Article II of the Ordinance violate the Commerce Clause of the United States Constitution, Article 1, § 8, because the Ordinance imposes an excessive burden on interstate commerce that outweighs any benefit which the ordinance may arguably provide to the citizens of Cook County. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).[5]

Where an ordinance applies even-handedly to intrastate and interstate commerce, "and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike,* 397 U.S. at 142, 90 S.Ct. at 847. If the court determines that the Ordinance has a legitimate local purpose, "then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.*

It is undisputed by both parties that the Ordinance is neutral on its face, is concerned only with local activity, and serves to protect public safety. This court must therefore only decide whether " 'this is one of those cases—few in number—where local safety measures that are nondiscriminatory place an unconstitutional burden on interstate commerce.' " *Dixie Dairy Co. v. City of Chicago,* 538 F.2d 1303, 1307 (7th Cir.), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612 (1976) (quoting *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 529, 79 S.Ct. 962, 967, 3 L.Ed.2d 1003 (1959)).

For Commerce Clause purposes, the Supreme Court has "long recognized a difference between economic protectionism, on the one hand, and health and safety regulation, on the other." *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* —— U.S. ——, —— n. 6, 112 S.Ct. 2019, 2026 n. 6, 119 L.Ed.2d 139 (1992) (citing *H.P. Hood & Sons v. Du Mond,* 336 U.S. 525, 533, 69 S.Ct. 657, 662–63, 93 L.Ed. 865 (1949)). *See also, Sporhase v. Nebraska,* 458 U.S. 941, 956, 102 S.Ct. 3456, 3464, 73 L.Ed.2d 1254 (1982). The Supreme Court has been reluctant to invalidate local health or safety regulations, such as the Ordinance at issue in this case, as violations of the Commerce Clause. *See Maine v. Taylor,* 477 U.S. 131, 149, 106 S.Ct. 2440, 2453, 91 L.Ed.2d 110 (1986); *Kassel v. Consolidated Freightways Corp.,* 450 U.S. 662, 670, 101 S.Ct. 1309, 1316, 67 L.Ed.2d 580 (1981); *Raymond v. Motor Transp., Inc.,* 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); and *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 109, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949). The Supreme Court stated that " 'if safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate com-

---

**4.** Defendants argue that the court should be reluctant to grant a preliminary injunction against the Ordinance unless plaintiffs prove that they a good chance of prevailing on the merits, not merely a non-negligible one. *See Illinois Psychological Assoc. v. Falk,* 818 F.2d 1337, 1340 (7th Cir.1987). Plaintiffs respond by claiming that the Seventh Circuit has not followed the "good chance" of prevailing requirement in subsequent cases including cases challenging the impact of state or local regulation promoting health and safety. Because the standard stated in *Falk* conflicts with the settled principle applied in more recent Seventh Circuit cases, plaintiffs contend that the "better than negligible" standard should apply in this case.

The Seventh Circuit has consistently held over the past several years that district courts should apply the "better than negligible" standard as a part of the process of deciding to grant or deny injunctive relief. *See e.g., Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1066 (7th Cir.1994); *Kinney,* 994 F.2d at 1278; and *Illinois Council On Long Term Care v. Bradley,* 957 F.2d 305, 307 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). This court finds, however, that it is inconsequential which standard applies in this case because under either standard plaintiffs have successfully shown the likelihood of prevailing on the merits of their case.

**5.** Defendants agree that the test established by the Supreme Court in *Pike* is the applicable standard in this case to determine if the Ordinance violates the Commerce Clause.

merce.'" *Kassel,* 450 U.S. at 670, 101 S.Ct. at 1316 (quoting *Raymond,* 434 U.S. at 449, 98 S.Ct. at 798). "Those who would challenge such bona fide safety regulations must overcome a 'strong presumption of validity.'" *Kassel,* 450 U.S. at 670, 101 S.Ct. at 1316 (quoting *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 524, 79 S.Ct. 962, 964, 3 L.Ed.2d 1003 (1959)).

Applying these general principals established by the Supreme Court, this court concludes that the Cook County Ordinance does not violate the Commerce Clause. The Ordinance is concerned only with local activity. Therefore, any effect the Ordinance has on interstate commerce is purely incidental. Plaintiffs do not allege that they engage in any sort of interstate sales. In addition, plaintiffs do not allege that the Ordinance will force most interstate gun shops in Cook County to close or that the Ordinance will greatly affect the interstate sale of firearms. Plaintiff's sole argument supporting their claim that the Ordinance will excessively burden interstate commerce is that the Ordinance may force plaintiffs to close down *their* businesses. The fact that the Ordinance prevents some interstate companies from selling firearms, however, does not show that the Ordinance impermissibly burdens interstate commerce overall. *See Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127, 98 S.Ct. 2207, 2214, 57 L.Ed.2d 91 (1978). The Ordinance may cause the source of the consumers' supply to change, "but interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another." *Id.*

In light of the public safety interest served by the Ordinance, and the strong presumption of validity plaintiffs must overcome to invalidate the Ordinance, the court concludes that plaintiffs have failed to show that the Ordinance imposes an impermissible burden on interstate commerce in violation of the Commerce Clause. *See Camille Corp. v. Phares,* 705 F.2d 223, 229 (7th Cir.1983).

## B.  Police Power

■   In Count II, plaintiffs allege that the Ordinance violates Article VII, § 6(a) of the Illinois Constitution which grants to home rule units, such as Cook County, the ability to exercise any of its governmental powers to protect the health, safety, morals and welfare of members of its community. *See* Ill. Const. Art. VII, § 6(a). Plaintiffs contend that the licensing procedures contained in the Ordinance are an impermissible exercise of defendants' home rule power because the procedures are not reasonably related to the County's goals of limiting school children's access to firearms and reducing gun violence that plagues school-age children in Cook County.

Under Illinois law, in order to constitute a valid exercise of the County's police power, "an ordinance must bear a reasonable relationship to the public interest sought to be protected and the means adopted must be a reasonable method of accomplishing the chosen objective." *Opyt's Amoco, Inc. v. Village of South Holland,* 149 Ill.2d 265, 172 Ill.Dec. 390, 392, 595 N.E.2d 1060, 1062 (1992) (citing *Crocker v. Finley,* 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346 (1984)). "Once the legislature identifies a problem and enacts legislation to protect and promote the general welfare of its citizens, the legislation is presumed to be a valid exercise of the police power." *Id.* (citing *Illinois Gamefowl Breeders Assoc. v. Block,* 75 Ill.2d 443, 27 Ill.Dec. 465, 389 N.E.2d 529 (1979)).

It is undisputed that the Ordinance in this case is directed at promoting a legitimate governmental interest. Therefore, this court must decide whether the means adopted by the County are a reasonable method of achieving this goal.

Defendants state that the legitimate local public interest the County seeks to serve by enacting the Ordinance "is to help limit or control the easy access to firearms and ammunition that exists in Cook County today, and to lessen the degree of firearms-related violence that plagues school-age children in our society."[6] Defendants argue that the

---

**6.** *Defendants' Response to Plaintiffs' Motion For Issuance of a Preliminary Injunction* at 6 (citing the Preamble to the Ordinance).

licensing procedures contained in Article II of the Ordinance are reasonable methods of achieving these stated goals because the location of gun shops in proximity to schools and public parks conveys the message to the County's children that firearms are an acceptable part of everyday life and this message of societal acceptance could lead to further escalation of firearms violence among youth.

Plaintiffs argue that children's attitudes about guns and violence are formed primarily by their exposure to various forms of entertainment that glamorize guns and violence not by their exposure to gun shops. Plaintiffs also contend that there are alternative effective methods that the County can employ to reduce the amount of gun-related violence among children.

It may be true that children's attitudes about guns and gun violence are formed by their exposure to various influences, and that Cook County could have adopted alternative measures to influence children's attitudes about guns and to reduce the level of gun violence among children, but it is not this court's function to determine whether the Ordinance is the best way of achieving the County's goals but merely whether the Ordinance is a reasonable method. *See Brotherhood of Locomotive Firemen & Enginemen v. Chicago, Rock Island & Pacific R.R. Co.*, 393 U.S. 129, 136–143, 89 S.Ct. 323, 327–330, 21 L.Ed.2d 289 (1968). *See also, Northside Sanitary Landfill v. Indianapolis*, 902 F.2d 521, 522–23 (7th Cir.1990). "If there are alternative ways of solving a problem, we [courts] do not sit to determine which of them is best suited to achieve a valid state objective." *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003 (1959). Policy decisions are to be made by the legislature, not by the courts. *Id.*

In light of the important governmental interest the Ordinance is designed to serve, and the strong presumption of validity plaintiffs must overcome to invalidate the Ordinance, plaintiffs have failed to convince this court that the licensing procedures of Article II constitute an unreasonable method of reducing firearm violence among children.

### C. *Due Process*

In Counts IV and V, plaintiffs allege that the Ordinance denies them their rights to due process because the licensing provisions fail to bear a rational relationship to the governmental interest the Ordinance purports to serve. Plaintiffs claim that studies show that, contrary to the County's assertions, there is no correlation between the number of gun shops in a community and the level of violent crime in that community.[7]

■ Because the licensing procedures contained in Article II of the Ordinance do not interfere with any constitutionally protected fundamental rights, the court must examine the Ordinance under the rational basis test. *See Smith v. Shalala*, 5 F.3d 235, 239 (7th Cir.1993). Under the rational basis test the court must determine whether the licensing procedure "bears a rational relationship to legitimate legislative goals." *Id.* (citing *Califano v. Jobst*, 434 U.S. 47, 53–54, 98 S.Ct. 95, 99–100, 54 L.Ed.2d 228 (1977)); *Weinberger v. Salfi*, 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975)). The Supreme Court has "stressed that this standard of review is typically quite deferential; legislative classifications are 'presumed to be valid,' largely for the reason that 'the drawing lines that create distinctions is peculiarly a legisla-

7. In support of their argument plaintiffs have attached the affidavits of two professors who specialize in the effects of guns on society. *See* Affidavit of Alan J. Lizotte, Ph.D., *Plaintiffs' Reply*, Exhibit A and Affidavit of David J. Bordua, Ph.D., *Plaintiffs' Reply*, Exhibit B. Defendants have moved to strike these affidavits because of plaintiffs' failure to include this factual information in their original motion and brief in this matter.

The court grants defendants' motion to strike Exhibits A–G of *Plaintiffs' Reply* because plaintiffs represented to this court that the preliminary injunction motion could be decided on the briefs as a matter of law without the consideration of additional factual matter such as expert testimony. If plaintiffs wanted this court to consider any new factual matters, plaintiffs should not have waited until their reply brief to introduce these affidavits. Therefore, the court will not consider Exhibits A–G of *Plaintiffs' Reply* when making its determination regarding preliminary injunction.

tive task and an unavoidable one.'" *Lyng v. International Union*, 485 U.S. 360, 370, 108 S.Ct. 1184, 1192, 99 L.Ed.2d 380 (1988) (citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976)). The rational basis review does not authorize "'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.'" *Heller v. Doe*, — U.S. —, —, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976)).

■ Defendants submit that the local public interest the County seeks to serve by enacting this Ordinance is "to help limit or control the easy access to firearms and ammunition that exists in Cook County today, and to lessen the degree of firearms-related violence that plagues school-age children in our society." [8] Defendants state that the County Board determined that the location of gun shops in proximity to schools and public parks sends a message to children that firearms are an acceptable part of everyday life. The County Board believes that this message of acceptability could lead to further escalation of firearm violence among youth.[9] Therefore, the Board determined that gun shops should not be located in areas where children regularly congregate.[10]

Plaintiffs claim that some studies show, contrary to the County's assertions, that there is no correlation between the number of gun shops in a community and the level of violent crime in that community. Therefore, plaintiffs argue, preventing gun shops from being located near schools and public parks will not affect the level of violence among children.

Although there are differing opinions regarding whether this Ordinance will actually reduce the level of violence among children, plaintiffs have not shown to this court that it is irrational for the County to believe that the Ordinance will achieve its stated goals. This court will not invalidate the licensing procedure in the Ordinance as plaintiffs suggest because defendants have not cited any data or studies to support the County's decision. "'[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.'" *Heller v. Doe*, — U.S. —, —, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993) (quoting *FCC v. Beach Communications, Inc.*, — U.S. —, —, 113 S.Ct. 2096, 2098, 124 L.Ed.2d 211 (1993)). *See also Northside Sanitary Landfill v. Indianapolis*, 902 F.2d 521, 523 (7th Cir.1990) (Seventh Circuit held that a local ordinance is not irrational simply because its effect "'is opposed by argument and opinion of serious strength.'" *Id.* (citing *Rast v. Van Deman & Lewis Co.*, 240 U.S. 342, 357, 36 S.Ct. 370, 374, 60 L.Ed. 679 (1916))); *Kalodimos v. Village of Morton Grove*, 103 Ill.2d 483, 83 Ill.Dec. 308, 320, 470 N.E.2d 266, 278 (1984) (Illinois Supreme Court upheld a local ordinance banning handguns in Morton Grove stating that the village could rationally have viewed the ordinance as a way of reducing weapons-related injuries and accidents within the village. *Id.*).

Because the rational basis analysis "is not a license for the courts to judge the wisdom, fairness, or logic of legislative choices," *FCC v. Beach Communication, Inc.*, — U.S. —, — — —, 113 S.Ct. 2096, 2100–01, 124 L.Ed.2d 211 (1993), the court concludes that plaintiffs have failed to show that they have a reasonable likelihood of prevailing on the merits of their due process claim.

### D. *Equal Protection*

■ "Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest." *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). A classification "must be upheld against equal protection

8. *Defendants' Response to Plaintiffs' Motion For Issuance of a Preliminary Injunction* at 6 (citing Preamble to the Ordinance).

9. *Id.* at 7.

10. *Id.*

challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communication,* —— U.S. at ——, 113 S.Ct. at 2101. Although this standard of review is deferential to legislative judgment, it "'is not a toothless one.'" *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976) (quoting *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976)). The standard of rationality "must find some footing in the realities of the subject addressed by the legislation." *Heller,* —— U.S. at ——, 113 S.Ct. at 2643.

In Count III, plaintiffs argue that the Ordinance denies them equal protection of the law because the classifications contained in Article II, § 2–5(c) of the Ordinance are not rationally related to the purpose of the Ordinance. Specifically plaintiffs argue that the classifications of the Ordinance violate the equal protection clause because the classifications are under-inclusive in that they allow certain businesses to continue to sell guns within .5 miles of a school or public park.

Indeed, large chain-department stores, such as Sportmart, K–Mart or Wal–Mart, which are not encompassed by the Ordinance's definition of "gun shop," may continue to advertise and sell firearms and ammunition within .5 miles of schools and parks. In addition, under this Ordinance, smaller stores and pawn shops, which primarily sell other merchandise and also sell firearms and ammunition, may continue to advertise and sell guns within .5 miles of schools and parks. In fact, any commercial enterprise whose primary business is not the sale of guns, if properly licensed, may continue to advertise and sell guns within .5 miles of a school under this Ordinance. Furthermore, under this Ordinance, firearm dealers who own their stores, whose only or primary business is the sale of firearms or firearm ammunition, may continue to advertise and sell guns within .5 miles of schools and parks.

Pursuant to Article II, § 2–5(c) of the Ordinance, the Director of Revenue is not to issue a Cook County firearms dealer's license to any person who is engaged in the business of dealing in firearms or firearm ammunition, or indicates an intention to do so, within .5 miles of the grounds of any school or public park, unless:

(1) the person operates a gun shop upon leased premises where said lease was in effect on September 7, 1993, in which case such person is exempt from this provision, but is exempt only for the remainder of the term of that lease without taking into account any extension or renewal of the terms of such lease made on or after September 7, 1993; or

(2) the person owns the premises to which the license is issued, and owned the premises on September 7, 1993; or

(3) the person does not operate a gun shop as defined in this ordinance; or

(4) the person is engaged in the business of dealing in firearms or firearm ammunition only at gun shows or events.

Article II, § 2–5(c)(1)–(c)(4).

For purposes of the exemptions contained in Article II, § 2–5(c), a "gun shop" is defined in the Ordinance as, "the premises of any federally licensed firearms dealer where the only or primary business or commercial enterprise conducted on the premises is the purchase or sale of firearms or firearm ammunition." Article II, § 2–1(d).

Based on the above exemptions, the Ordinance's geographical restrictions apply only to dealers leasing their premises, whose primary business is the sale of firearms. Therefore, exempt from the Ordinance's restrictions are firearm dealers who own their own stores and department stores and specialty stores which sell firearms but not as their primary business.

The Supreme Court held that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citation omitted). The County "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Id.,* 473 U.S. at 446, at 3258.

In this case, the Ordinance's geographical restrictions apply only to dealers leasing their premises, whose primary business is

the sale of firearms. The County has stated that the purpose of the Ordinance's geographical restrictions "is to lessen the degree of firearms-related violence that plagues school-age children in our society," [11] and to keep "guns away from places where children congregate and play." [12] The court finds that the classifications contained in Article II, § 2–5(c)(1)–(c)(4) are under-inclusive in violation of the equal protection clause because the classifications rest on grounds wholly irrelevant to the achievement of the Ordinance's purposes. *See Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985); *United States Dep't of Agric. v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

The County has arbitrarily and irrationally excluded certain businesses that sell guns within .5 miles of a school or public park. The court finds nothing in the purposes of the Ordinance or in the characteristics of property ownership to warrant the exemption contained in Article II, § 2–5(c)(2) for persons who own the premises to which the license is issued. In addition, the court finds that the exemption contained in Article II, § 2–5(c)(3) for gun sellers whose primary business is something other than the sale of firearms does not rationally further the County's goals. *See Lindsey,* 405 U.S. at 78, 92 S.Ct. at 877 (Supreme Court held that requirement of Oregon statute that a tenant who wishes to appeal in a forcible entry and detainer action must give a double-bond violates tenant's right to equal protection of the law because the additional requirement arbitrarily discriminates against tenants. *Id.*). *See also, Hooper,* 472 U.S. at 622–23, 105 S.Ct. at 2868 (Supreme Court held that New Mexico may not favor established residents over newer residents for veteran's tax exemption because the statute's distinction between resident veterans is not rationally related to the state's asserted legislative goal of granting annual property tax exemptions to residents who served in the Armed Forces.

*Id.*); *United States Dep't of Agric. v. Murry,* 413 U.S. 508, 512–17, 93 S.Ct. 2832, 2835–37, 37 L.Ed.2d 767 (1973) (Supreme Court held that provision in Food Stamp Act denying food stamp eligibility for households containing persons 18 years old or older who had been claimed as dependents for federal income tax purposes by taxpayers who were themselves ineligible for food stamp relief, is "wholly without any rational basis" because it does not operate so as rationally to further the legislative goal of the prevention of fraud. *Id.*).

The County claims that the purpose of the Ordinance's geographical restrictions is to keep guns away from places where children congregate and play.[13] The Ordinance, however, allows the Director of Revenue to issue a Cook County firearms dealer's license to a person who sells firearms within .5 miles of a school or public park as long as the person owns the premises to which the license is issued or selling guns is not the person's primary business. There is no rational reason to distinguish between a gun sold within .5 miles of a school or park by a person who owns the premises on which the gun shop is operated and a gun sold by a person who leases the premises on which a gun shop is operated. In both instances, guns will be sold near areas where children congregate and play. Plaintiffs therefore have sustained their burden of demonstrating a likelihood of success on the merits of their equal protection claim.

## III. *Balancing the Harms*

■ Because plaintiffs have met their threshold burden of proving the first three elements for the issuance of a preliminary injunction, the inquiry now becomes "a 'sliding scale' analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits." *Ping v. National Educ. Assoc.,* 870 F.2d 1369, 1371 (7th Cir.1989). The more likely the plaintiffs are to win, the

---

**11.** *Defendants' Response to Plaintiffs' Motion For Issuance of a Preliminary Injunction* at 6 (citing the Preamble to the Ordinance).

**12.** *Id.* at 22.

**13.** *Defendants' Response to Plaintiffs' Motion For Issuance of a Preliminary Injunction* at 22.

less heavily need the balance of harms weigh in their favor. *Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387 (7th Cir.1984) (citations omitted).

In this case, plaintiffs have shown a much "better than negligible" chance of success on the merits. Indeed, plaintiffs, more likely than not, will successfully prove that the Ordinance violates their rights to equal protection of the law. If the injunction is denied, plaintiffs face the potential loss of their businesses. In light of the types of businesses exempted from the Ordinance's reach by the classifications of Article II of the Ordinance, the continuation of plaintiffs' businesses will pose little additional threat of harm to the community. Even if plaintiffs are prevented from selling guns within .5 miles of a school or public park, businesses who sell guns and primarily sell other merchandise, as well as other guns shops, operated by people who own rather than lease their shops, will continue to sell guns within .5 miles of a school or park. Therefore, based upon the facts presented by plaintiffs and the absence of any opposition by defendants on this point, this court finds that the balance of harms weighs in the favor of granting plaintiffs' request for a preliminary injunction.

## IV. *The Public's Interest*

█ The public's interest will not be disserved by the injunction, but will, in fact, be served by the granting of this preliminary injunction demonstrating the clear deficiencies in the Ordinance because of the Ordinance's severe under-inclusion in its classifications when compared to the Ordinance's purposes. The Board of Commissioners of Cook County may rectify these deficiencies by enacting an ordinance which will pass Constitutional muster.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for a preliminary injunction is GRANTED and defendants' motion to strike is GRANTED. Until a Constitutional ordinance is passed mooting this litigation, or a determination on the merits, whichever occurs first, the enforcement of Article II of Cook County Ordinance No. 190061 entitled "Cook County Firearms Dealer's License and Assault Weapons Ban Ordinance" is enjoined. The case is set for further status on February 28, 1994 at 10:30 a.m.