**ILLINOIS SPORTING GOODS ASSOCIATION, et al., Ronald Straff, an individual, Maxon Shooters Supply, Inc., an Illinois corporation, Shore Galleries, Inc., an Illinois corporation, William Klicka, an individual, Paul Petersen, an individual, and Cook County Gun Collectors, Inc., an Illinois corporation, Plaintiffs,**

**v.**

**COUNTY OF COOK, a Home Rule body corporate and politic, and Barbara Bruno, as Director Cook County Department of Revenue, Defendants.**

No. 93 C 7403.

United States District Court,
N.D. Illinois,
Eastern Division.

April 27, 1995.

James Valentino, Jr., Streamwood, IL, Royal B. Martin, Jr., William Gibbs Sullivan, Leigh David Roadman, Robert S. Grabemann, Martin, Brown & Sullivan, Ltd., Chicago, IL, for Ill. Sporting Goods Ass'n, an Ill. not-for-profit organization, Ronald Straff, an individual, Donald Beltrame, an individual, William Klicka, an individual, Paul Petersen, an individual.

James Valentino, Jr., Streamwood, IL, for Maxon Shooters Supply, Inc., an Ill. corp., Shore Galleries, Inc., an Ill. corp., Cook County Gun Collectors, Inc., an Ill. corp.

Jeffrey S. McCutchan, Atty. Gens. Office, Harry John Devereux, Terry L. McDonald, Connie R. Barba, Cook County State's Attys., Chicago, IL, for County of Cook, a Home Rule body corporate and politic, and Barbara Bruno, as Director, Cook County Dept. of Revenue.

## MEMORANDUM OPINION AND ORDER

CASTILLO, Judge.

Plaintiffs Illinois Sporting Goods Association, Maxon Shooters Supply, Inc., Shore Galleries, Inc., Cook County Gun Collectors, Inc., Ronald Straff, William Klicka, and Paul Petersen (hereinafter collectively referred to as "plaintiffs") seek, *inter alia,* declaratory and injunctive relief against defendants Cook County and Barbara Bruno, in her official capacity as Director of the Cook County Department of Revenue (hereinafter collectively referred to as "defendants"). Plaintiffs seek declaratory judgment that the Cook County Firearms Dealer's License and Assault Weapons Ban Ordinance (the "Amended Ordinance"[1]) is unconstitutional under both the Illinois and United States Constitutions and is invalid on a variety of other grounds as well. Plaintiffs also seek preliminary and permanent injunctive relief enjoining enforcement of Article II of the Amended Ordinance. Plaintiffs' six count complaint attacks the Amended Ordinance on several grounds alleging that it violates due process (counts I, V, and VI) and equal protection (count IV), that it is the product of an invalid exercise of the Board's "home rule powers" under Article VII, § 6(a) of the Illinois Constitution (count II), and that it impermissibly conflicts with federal law (count III).

Defendants move to dismiss counts I, II, III, and VI; and, move for summary judgment on counts IV and V.[2] These motions as well as plaintiffs' motion for preliminary injunction are presently before the Court.

## BACKGROUND

On October 19, 1993, the Board of Commissioners of Cook County passed the Cook County Firearms Dealer's License and Assault Weapons Ban Ordinance, establishing

---

1. As we explain below, the Cook County Firearms Dealer's License and Assault Weapons Ban Ordinance was amended after plaintiffs succeeded in obtaining a preliminary injunction enjoining enforcement of Article II of the Ordinance. This opinion shall refer to the Cook County Firearms Dealer's License and Assault Weapons Ban Ordinance as originally enacted as "the Ordinance."

2. As we shall explain below, in their reply memorandum in support of the motion for summary judgment, the defendants effectively expanded the scope of their motion for summary judgment by arguing that none of the plaintiffs have standing to bring the present suit; accordingly, the defendants seek summary judgment on all counts of the complaint.

licensing procedures for firearms dealers located in Cook County (Article II), and banning the possession of assault weapons in Cook County (Article III).[3] Board President Richard Phelan signed the Ordinance on November 18, 1993.

The recitals to the Ordinance reflect the findings of the Board that "the proliferation of firearms dealers and the easy access to firearms and ammunition has become a concern of public health, safety, and welfare for the citizens of Cook County[.]" Because the findings of the Board reflected in the recitals highlight the problems confronted by the Board—if not the Nation—and provide guidance as to the ends sought to be accomplished by the Board in enacting the Ordinance, we quote at length:

> **WHEREAS,** of the 4500 trauma cases handled this year at Cook County Hospital 1,000 were due to gun shot wounds; and
>
> **WHEREAS,** there are more federally licensed firearms dealers in Cook County than there are gas stations; and
>
> **WHEREAS,** it is estimated that one in twenty high school students has carried a gun at least once in the past month; and
>
> **WHEREAS,** the proximity of a gun shop to a school sends a message to the children about the acceptability of guns in our society; and
>
> **WHEREAS,** there is no legitimate sporting purpose for the military style assault weapons now being used on our streets; and
>
> **WHEREAS,** assault weapons are twenty times more likely to be used in the commission of a crime than other kinds of weapons; and
>
> **WHEREAS,** both the Federal Gun Control Act of 1968, 18 U.S.C. § 927, and the Illinois Firearms Owners Identification Card Act, 430 ILCS 65/12.1, specifically provide that they do not preempt further

local regulation of the sale and possession of firearms[.]

Ordinance at 1.

As originally drafted, Article II of the Ordinance made it unlawful for any person licensed under federal law to engage in the business of dealing in firearms at an address within Cook County to engage in that business without having applied for or obtained a Cook County firearms dealer's license pursuant to the Ordinance by February 15, 1994. *See* Ordinance, Art. II, § 2–2(a). The applicability of the Ordinance is specifically limited, however, such that (a) if the provisions of the Ordinance conflict "with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction," *id.* § 1–2(a), and (b) "If a municipality licenses firearms dealers under a municipal ordinance apart from any other general business license issued by the municipality, this Ordinance shall not apply within that municipal jurisdiction with respect to such license." *Id.* § 1–2(b).

Article II, section 2–3(a) of the Ordinance vested authority over administration of licensing of Cook County firearms dealers in the Director of the County's Department of Revenue (the "Director"). Under Article II, section 2–5(c), the Director was prohibited from issuing a license to any person engaged in the business of dealing in firearms or firearms ammunition (or who indicates an intention to do so) within 0.5 miles of a school or public park, unless:

> (1) the person operates a gun shop [4] upon leased premises where said lease was in effect on September 7, 1993, in which case such person is exempt from this provision, but is exempt only for the remainder of the term of that lease without taking into account any extension or renewal of the terms of that lease made on or after September 7, 1993; or
>
> (2) the person owns the premises to which the license is issued, and owned the premises on September 7, 1993; or

---

**3.** Plaintiffs do not challenge the provisions of the Amended Ordinance banning the possession of "assault weapons"; therefore, we do not address those provisions in this opinion.

**4.** [This Court's footnote.] For the purposes of the exemptions contained in § 2–5(c), a "gun

shop" is defined as "the premises of any federally licensed firearms dealer where the only or primary business or commercial enterprise conducted on the premises is the purchase or sale of firearms or firearm ammunition." Ordinance, Art. II, § 2–1(d).

(3) the person does not operate a gun shop as defined in this ordinance; or

(4) the person is engaged in the business of dealing in firearms or firearm ammunition only at gun shows or events.

Ordinance, Art. II, § 2–5(c)(1)–(4).

In previous proceedings in this action before Judge Holderman[5], the plaintiffs sought and obtained a preliminary injunction enjoining enforcement of Article II of the Ordinance. *See Illinois Sporting Goods Ass'n v. County of Cook*, 845 F.Supp. 582 (N.D.Ill. 1994).[6] In a Memorandum Opinion and Order dated February 7, 1994,[7] Judge Holderman found that plaintiffs had not succeeded in establishing a reasonable likelihood of success on the merits with respect to their commerce clause, police power ("Home Rule"), and due process claims. *See id.* at 586–89. However, Judge Holderman found that the classifications embodied in the exceptions to the geographical restrictions set out in section 2–5(c) of the Ordinance, "are under-inclusive in violation of the equal protection clause because the classifications rest on grounds wholly irrelevant to the achievement of the Ordinance's purposes." *Id.* at 591. In particular, Judge Holderman found that by excluding gun sellers whose primary business was something other than the sale of firearms (for instance, large department stores such as Sportmart, K–Mart, or Wal-Mart, as well as smaller stores and pawn shops that primarily sell other merchandise but also sell firearms and ammunition) and by excluding firearm dealers who own—rather than lease—the premises upon which their store is located, "[t]he County has arbitrarily and irrationally excluded certain businesses that sell guns within .5 miles of a school or public park." *Id.* Such exemptions, Judge Holderman found, did not rationally further the County's goals:

> There is no rational reason to distinguish between a gun sold within .5 miles of a school or park by a person who owns the premises on which the gun shop is operated and a gun sold by a person who leases the premises on which a gun shop is operated. In both instances, guns will be sold near areas where children congregate and play.

*Id.* Accordingly, Judge Holderman found that the plaintiffs had succeeded in demonstrating a reasonable likelihood of success on the merits of their equal protection claim. Judge Holderman also found that the balancing of the harms and the public interest weighed in favor of granting a preliminary injunction enjoining enforcement of Article II of the Ordinance.[8] *Id.* at 591–92. With respect to the latter element, Judge Holderman noted that the public interest would "be served by the granting of this preliminary injunction demonstrating the clear deficiencies in the Ordinance because of the Ordinance's severe under-inclusion in its classifications when compared to the Ordinance's purposes. The Board of Commissioners of Cook County may rectify these deficiencies by enacting an ordinance which will pass constitutional muster." *Id.* at 592. The

---

5. This case was originally assigned to Judge Holderman's calendar. By order of the Executive Committee, it was reassigned to this Court's calendar effective May 13, 1994.

6. The defendants initiated an appeal of Judge Holderman's Opinion granting plaintiffs' motion for preliminary injunction but subsequently withdrew the appeal.

7. The opinion published in the FEDERAL SUPPLEMENT bears the date February 15, 1994, which is the date the Clerk's office docketed the Memorandum Opinion and Order.

8. In a subsequent Minute Order, Judge Holderman clarified that his previous order enjoined only the following provisions of Article II of the Ordinance: § 2–1(d) (defining a "gun shop"); § 2–2(a)–(b) (requiring a Cook County firearms dealer's license to engage in the business of dealing in firearms in Cook County); § 2–3 (providing for the administration of licensing by the Director and the promulgation of rules and regulations to carry out the duties required by the Ordinance); § 2–5(c)–(e) (prohibiting issuance of a license to any person who intends to engage in the business of dealing in firearms within 0.5 miles of a school or public park); § 2–6 (providing for the denial or revocation of a license); and § 2–8 (providing for penalties for failure to comply with the Ordinance). *See Illinois Sporting Goods Ass'n v. County of Cook,* Minute Order, February 9, 1994. The Ordinance contains a severability clause providing that if any provision of the Ordinance is deemed to be invalid or unconstitutional, such decision shall not impair or invalidate any remaining provision of the Ordinance. *See* Ordinance § 1–3.

Board moved swiftly on Judge Holderman's suggestion. On July 6, 1994, the Board approved and adopted Ordinance 194291, repealing Article II of the Ordinance and amending it as set out below.[9]

Perhaps most significantly (in light of Judge Holderman's opinion), the Amended Ordinance deleted all of the exemptions to the firearms dealer's licensing restrictions previously provided for in section 2–5(c) [quoted in their entirety above]. However, whereas the Ordinance as originally enacted prohibited the issuance of a firearms dealer's license to anyone engaged in the business of dealing in firearms "within 0.5 miles of the grounds of a school or public park," the amended Ordinance reduced that distance to 0.25 miles "measured from the property lines of the respective properties." *See* Amended Ordinance § 2–5(c). Also, the Amended Ordinance expanded the definition of a public park to include "any land owned by the Forest Preserve District of Cook County." Amended Ordinance § 2–1(g).[10]

In addition to the foregoing amendments relating to the licensing of firearms dealers, the Amended Ordinance also broadens the scope of the Ordinance to include "gun show[s] or event[s]." Specifically, section 2–2(b) of the Amended Ordinance requires any person sponsoring a gun show or event within Cook County to first obtain a permit. *See* Amended Ordinance § 2–2(b). The Amended Ordinance confers authority for issuing such permits on the Director. *See* Amended Ordinance § 2–3(a). The Amended Ordinance specifically provides that "[n]o more than four permits shall be issued for the same location during any six month period." Amended Ordinance § 2–2(b). The Amended Ordinance also added a $100.00 permit fee for a gun show or event. The $500.00 annual fee for a firearm dealer's license provided for in the original Ordinance was not altered. *See* Amended Ordinance § 2–4.

It is important to note at this point that nothing in the Amended Ordinance nullified or otherwise altered sections 1–2(a) and 1–2(b) of the Ordinance as originally enacted. These sections, it will be recalled, reiterate the principal mandated by the Illinois constitution that if the provisions of the Ordinance conflict with a municipal ordinance, the municipal ordinance shall prevail, *see* Ordinance § 1–2(a), and preclude application of the licensing provisions of the Ordinance in municipalities that license firearm dealers through municipal ordinance, *see id.* § 1–2(b). Thus, under the Amended Ordinance, these provisions remain in full force and effect.

Approximately three months after the County enacted the Amended Ordinance, the plaintiffs filed their amended complaint challenging the validity of the Amended Ordinance, and again moved for preliminary injunction enjoining enforcement of Article II of the Amended Ordinance.

## ANALYSIS

*Plaintiffs' Standing*

■ As a threshold matter, we are called upon to address plaintiffs' standing to bring the instant action. The issue of standing presents "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1974); *see also Northside Sanitary Landfill, Inc. v. Thomas,* 804 F.2d 371, 380–81 (7th Cir.1986) (noting that standing "bears on the power of a court to entertain a party's claim"). "The analysis of standing under Article III focuses on the party bringing a claim not on the claim itself." *Northside,* 804 F.2d at 381. As the Court explained in *Warth:*

> the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal court juris-

---

9. We do not purport to detail every change to the Ordinance effected by the Amended Ordinance. Rather, we have set out only those changes that are relevant to plaintiffs' challenge.

10. Under the Ordinance as originally enacted, the definition of "public park" included only

"any land or buildings set apart for public recreation and owned by any unit of government." Ordinance § 2–1(i). The definition of "public park" in the Amended Ordinance includes this language as well as that quoted in the text concerning Forest Preserve property.

diction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action...." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

422 U.S. at 498–99, 95 S.Ct. at 2205. The standing requirement contains three elements which the party invoking federal jurisdiction bears the burden of establishing: (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). When a plaintiff is not the object of the governmental action that he challenges, "standing is not precluded" but it is "substantially more difficult" to establish than if he were the object of the challenged action. *Id.* at 562, 112 S.Ct. at 2137.[11]

Defendants' motion for summary judgment seeks, *inter alia,* judgment against plaintiff Shore Galleries, Inc. ("Shore Galleries") on all counts based on Shore Galleries' purported lack of standing. Defendants maintain that because Shore Galleries is a firearms dealership operating in Lincolnwood, Illinois—a municipality that has adopted its own ordinance licensing firearms dealers preempting application of the Amended Ordinance, *see* Defs.' Local Rule 12(M) Facts, ¶¶ 3, 4, Shore Galleries does not fall within the reach of the Amended Ordinance. Therefore, defendants argue, Shore Galleries has no standing to maintain an action challenging the Amended Ordinance's validity.

■ It is uncontroverted that Shore Galleries operates within Lincolnwood, Illinois, and that Lincolnwood has adopted its own ordinance licensing firearms dealers preempting Cook County from applying its Amended Ordinance to Shore Galleries.[12] Indeed, plaintiffs' response to the motion for summary judgment effectively concedes that Shore Galleries lacks standing and requests that Shore Galleries be dismissed as a party plaintiff.[13] This request will be granted by the Court.

11. To establish standing when the plaintiff is not the object of the challenged governmental action, he or she must show that the responses of those subject to the action "have been or will be made in such a manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562, 112 S.Ct. at 2137.

12. Evidence submitted by the defendants in the form of a letter to defendant Bruno from Shore Galleries' counsel reveals that Shore Galleries was aware of the fact that it was not subject to the Amended Ordinance at least four days before the amended complaint was filed in this action. In response to this evidence, plaintiffs' counsel (who was not Shore Galleries' individual counsel) states, "Plaintiffs' attorney was not aware of the Lincolnwood ordinance at the time of filing the Amended Complaint as it was adopted after the attorney discussed the case with said plaintiff and prior to filing the Amended Complaint." Pls.' Resp. at 2. The Court will remind plaintiffs' counsel that, although Rule 11 does not impose an ongoing duty to update pleadings, it does impose a duty to reasonably investigate the factual and legal bases upon which the claims made in an initial pleading rest. *See Dahnk v. Teamsters Local 695*, 906 F.2d 1192, 1200–01 (7th

Cir.1990). Without intending to suggest that plaintiffs' counsel's pre-filing investigation fell short of that duty, we would state that it is surely the rare case where no follow-up investigating is warranted after an initial consultation with a client-particularly where that follow-up is nothing more than an inquiry as to whether any material changes have occurred between the time of the last consultation and the filing of a complaint. Moreover, the Court notes that plaintiffs' counsel does not even intimate that he ever investigated as to whether the municipalities within which his firearm dealer clients conduct business had enacted their own firearm dealer's licensing ordinances.

13. Plaintiffs indicated in their response to the motion for summary judgment that they "will move to add Paul Beinlich as [a] party plaintiff." Resp. at 2. Mr. Beinlich does business as B & B Truck Repair in Northbrook, Illinois. *See* Resp., Ex. A. Since Mr. Beinlich conducts business in Northbrook, which has enacted its own firearm dealer's licensing ordinance, *see* Defs.' Reply, Ex. F, the Amended Ordinance has no applicability to Mr. Beinlich's business and his position *vis-a-vis* standing is no better than that of Shore Galleries. In this regard we note that the "Notice of

In conjunction with their reply memorandum in support of summary judgment, defendants submitted evidence showing that each of the remaining individual plaintiffs also conducts business in municipalities that have enacted their own firearms dealer's licensing ordinances preempting application of the Amended Ordinance. Specifically, the amended complaint alleges that plaintiff Ronald Straff operates a gun shop in Westchester, Illinois, *see* Am.Compl. ¶ 8; and, defendants have submitted a copy of the Village of Westchester's Ordinance 94–1405 which was explicitly enacted on November 8, 1994, in response to the Cook County Amended Ordinance and which specifically provides for the licensing of firearm dealers and thus preempts the Cook County Amended Ordinance. *See* Reply, Ex. A.

Similarly, the amended complaint states that plaintiff Maxon Shooters Supply, Inc. operates a gun shop and shooting range in Des Plaines, Illinois, *see* Am.Compl. ¶ 9; and, defendants have submitted a copy of ordinance M–82–94 approved by the City of Des Plaines, Illinois, on December 8, 1994, which specifically provides for the licensing of firearm dealers and thus preempts the Cook County Amended Ordinance. *See* Reply, Ex. C.

█ With respect to plaintiffs William Klicka and Paul Petersen both of whom operate (or operated) gun shops in Arlington Heights, Illinois, *see* Am.Compl. ¶¶ 11, 12, defendants have submitted a copy of Art. XXXIII of the Arlington Heights Municipal Code which provides for the licensing of gun dealers by the Village of Arlington Heights and which sets out various restrictions and requirements pertaining to gun dealers. *See* Reply, Ex. D. Defendants maintain that Art. XXXIII of Arlington Heights' municipal code preempts the Cook County Amended Ordinance, *see* Reply at 3, and this Court agrees.

Although section 14–3301 of Art. XXXIII requires gun dealers to obtain a "business license" from the Village pursuant to the provisions of another section of the municipal code, the additional sections of Art. XXXIII impose additional requirements on applicants for a gun dealer's license, *see* Arlington Heights Mun.Code § 14–3302 (requiring the furnishing of such information as the Village Board deems necessary and requiring that a background investigation of the applicant be conducted by the Chief of Police), and impose additional restrictions on those "licensed pursuant to the provisions of [Art. XXXIII]." *Id.* § 14–3303. Thus, we conclude as a matter of law that Arlington Heights "licenses firearms dealers under a municipal ordinance, apart from any other general business license issued by the municipality," Amended Ordinance § 1–2(b), and hence the Amended Ordinance is preempted by the Arlington Heights municipal code.

Finally, with respect to plaintiff Cook County Gun Collectors, Inc., which is an Illinois not-for profit corporation that conducts gun shows at an exposition center in the City of Harvey, Illinois, *see* Am.Compl. ¶ 13; *see also* Pls.' Mem.Supp.Resp. to Mot. Summ.J., Ex., B, defendants have submitted a copy of a letter from Sue King, President of Cook County Gun Collectors, Inc., to defendant Bruno, enclosing a copy of City of Harvey Ordinance No. 2915—"An ordinance authorizing the permitting of gun shows." Harvey enacted the ordinance pursuant to its home rule powers and the ordinance specifically preempts application of laws other than Federal and State laws. In her letter to Ms. Bruno, Ms. King states that in view of the newly enacted City of Harvey ordinance, "the Cook County Gun Collectors, Inc. will no longer be obtaining permits through your department." Defs.' Reply Supp.Mot. to File

Tentative Denial of One Year Firearms Dealer's License" issued to Beinlich by defendant Bruno based on B & B's proximity to a public park, *see* Pls.' Resp., Ex. A, was subsequently superseded by the Director who informed Beinlich that he was exempt from the County's Amended Ordinance. *See* Defs.' Reply Supp.Mot. to File Reply Mem.Instanter, Ex. B. The Director's letter to Beinlich was copied to plaintiffs' counsel who therefore was on notice that Beinlich was exempt

from the Amended Ordinance shortly after filing plaintiffs' response to the motion for summary judgment. Again, although Rule 11 does not impose a continuing obligation to supplement filings submitted to the Court, we are nevertheless troubled by counsel's failure to bring this development to the Court's attention. It must not be forgotten that the obligations imposed by Rule 11 establish a floor not a ceiling for ethical conduct.

Reply Mem. Instanter, Ex. C. Defendants concede that Harvey's ordinance "clearly preempts the County's Ordinance." *Id.* at 5.

Although plaintiffs have objected—based on their purported inability to respond to the new arguments and evidence—to defendants' efforts to broaden the scope of their motion for summary judgment, *see* Pls.' Resp. Defs.' Mot. for Leave to File Reply, plaintiffs, in their response, have not even attempted to controvert the evidence submitted by defendants. Nor have plaintiffs filed a motion for leave to file a surreply indicating how they would controvert that evidence.

▮ Because the issue of standing goes to the Court's jurisdiction to entertain the suit, the Court has an independent obligation to consider the issue. *See Lindley v. Sullivan,* 889 F.2d 124, 128 n. 3 (7th Cir.1989) ("We are obliged to address standing because it is a predicate to our subject matter jurisdiction"); *see also D'Amico v. Schweiker,* 698 F.2d 903, 906 (7th Cir.1983); *Aikins v. St. Helena Hosp.,* 843 F.Supp. 1329, 1333 (N.D.Cal.1994) (noting that the court has an independent obligation to consider the standing issue); *Consolidated Edison Co. v. Herrington,* 752 F.Supp. 1082, 1087 (D.D.C 1990) (noting that since standing is jurisdictional, the court has an obligation to consider it *sua sponte* ). The Court simply cannot close its eyes to evidence that calls into question its jurisdiction over a case. *Cf. Barnett v. Stern,* 93 B.R. 962, 967 (N.D.Ill.1988) ("Since standing is jurisdictional, the parties' failure to raise the issue does not permit the court to overlook it."). The defendants' submission of the Lincolnwood, Northbrook, Arlington Heights, Westchester, Des Plaines, and Harvey ordinances, establishes quite unequivocally that plaintiffs Shore Galleries, Maxon Shooters Supply, Inc., Cook County Gun Collectors, Inc., Straff, Klicka, and Petersen are not subject to the reach of the Amended Ordinance. Moreover, plaintiffs have made no other showing to establish that these named plaintiffs can otherwise meet the elements of injury in fact, causation, and redres-

sibility. Accordingly, the Court *sua sponte* shall dismiss these plaintiffs without prejudice for lack of standing.[14]

▮ That leaves the Illinois Sporting Goods Association ("ISGA") as the only remaining plaintiff in this action. The amended complaint identifies ISGA as follows:

> Plaintiff, ILLINOIS SPORTING GOODS ASSOCIATION, is an Illinois Not-for-Profit association of sporting goods and firearms dealers, most of which are located in Cook County, Illinois, appearing herein on behalf of the fourteen (14) of the over thirty (30) gunshops and many individual firearm dealers in Cook County, Illinois that will lose their businesses under the aforesaid ordinance.

Am.Compl. ¶ 7. The amended complaint does not, however, identify any of the fourteen gun shops on behalf of whom ISGA purportedly appears, nor does the amended complaint allege any of the factual circumstances under which these gun shops will lose their businesses under the Amended Ordinance. Although there can be little doubt that an association may have standing to maintain a suit on behalf of its members, *see, e.g., Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), in order to do so, the association has the burden of establishing, *inter alia,* that its members would otherwise have standing to sue in their own right. *Id.* The amended complaint filed in this action does not sufficiently allege facts that enable this Court to conclude that ISGA has the requisite standing to sue on behalf of its members. Thus, the Court cannot conclude that it possesses subject matter jurisdiction over this case. Accordingly, the Court shall dismiss this action in its entirety, without prejudice, and grant ISGA 45 days to file a second amended complaint that sufficiently alleges facts that permit this Court to conclude that it possesses jurisdiction over this case.

---

14. Actually, the more appropriate justiciability doctrine at this point for most of these plaintiffs is probably that of mootness. However, since it is immaterial whether we dismiss these plaintiffs on the ground that their alleged injuries have become moot or on grounds of standing, we shall decide the issue on the ground of standing as it was framed by the defendants.

*CONCLUSION*

Plaintiffs Shore Galleries, Maxon Shooters Supply, Inc., Cook County Gun Collectors, Inc., Ronald Straff, William Klicka, and Paul Petersen are dismissed without prejudice as party plaintiffs in this action. The case is dismissed without prejudice due to the remaining plaintiff Illinois Sporting Goods Association's lack of standing to sue on behalf of its members. Illinois Sporting Goods Association is granted 45 days to file a second amended complaint. All remaining pending motions in this matter are denied as moot. Illinois Sporting Goods Association's failure to file an amended complaint within the specified 45 day period will result in the dismissal of this case with prejudice.